## Pond Creek Coal Company v. Asa Runyan.

## Don Runyan, By et al. v. Pond Creek Coal Company.

(Decided November 17, 1914.)

## Appeals from Pike Circuit Court.

1. Costs.—In a suit brought by one for the benefit of others, it was not error for the court to award cost against the others on account of a pleading needlessly filed by them.
2. Deeds—Maintenance—Title.—A deed made to ancestor in consideration of support and maintenance and with restriction of alienation, an order of court canceling ancestor's conveyance made in violation of the restriction, places the title in ancestor's heirs-at-law under all the restrictions of his deed.
3. Deeds—Construction.—Where a deed conveys, "a certain tract or parcel of land," without any qualifying or limiting descriptive terms, the grant will not be limited to surface or mineral or anything less than all of the land, although at the time grantor may have believed that the surface only was valuable.
4. Deeds—Alienation Clause.—Mere knowledge by the grantor of the fact that grantee had sold the land in violation of an alienation clause will not amount to consent unaccompanied by other facts which will operate as an estoppel.
5. Limitation of Action—Minerals.—As to mineral rights, the statute of limitation does not begin to run against those in possession until some act of interference, ownership or control is exercised by those claiming the minerals.
6. Land—Forfeiture.—The doctrine of forfeiture only applies to a right which one at some time was legally entitled to maintain, but one cannot forfeit something which he never had.
7. Land—Alienation—Perpetuities.—A restriction of alienation during the lifetime of the grantor is neither unreasonable nor in violation of section 2360, Kentucky Statutes, condemning a restriction of alienation in perpetuity.

AUXIER, HARMAN & FRANCIS, Attorney for Pond Creek Coal Company.

F. W. STOWERS for appellee, Asa Runyon; also for appellants, Don Runyon, et al.

Opinion of the Court by Judge Nunn—Affirming.

In 1884, Asa Runyan and wife conveyed to their son, Jacob, and his wife, about 400 acres of land in Pike County, for a nominal consideration; the real one being love and affection. Asa Runyan had theretofore conveyed other tracts of land to his other children, in fee

simple, and without any restriction or condition, but, in this deed to Jacob and his wife, these clauses are found:

"And Jacob Runyan and Sallie, the party second, is bound not to sell said land during said Asa H. Runyan lifetime without his consent * * *.

"The parties of the second part is hereby bound to maintain the said Asa H. Runyan and Sarah Runyan, his wife, they themselves personally. If called on during their natural lives. If they become unable to maintain themselves."

It is apparent from the evidence that the restriction on alienation was due to Jacob Runyan's improvident and reckless disposition. In 1889, Jacob Runyan and his wife sold and conveyed to Arthur D. Bright for $1.00 per acre, the coals and right to mine same, under all this land except about 30 acres. In a few weeks after this sale he was killed. His wife, Sallie Runyan, resided on the place with her children as long as she lived, and the children have continued to reside there. By *mesne* conveyances, Arthur D. Bright's title to the coal has come to the appellant, Pond Creek Coal Company. Until about the time this suit was instituted by Asa Runyan, the original vendor, no mining or development work or any other act of ownership or control was ever asserted or exercised by Bright or any of his vendees. Asa Runyan brought this suit setting up the terms of the conveyance to his son Jacob, and alleging that Jacob had attempted to sell the coals in violation of the provisions of the deed, and, for that reason, the title had reverted to him, and that the Bright deed, with all subsequent ones down to the Pond Creek Company, operated as a cloud on his title, and served to depreciate the value of the land. His prayer was for cancellation of all the deeds from Jacob Runyan down to the Pond Creek Company, and for a judgment declaring him to be the owner of the "said mineral and mineral products." It is clear that the procedings, including the claim of reversion, were intended in behalf of the children of Jacob Runyan. They filed an intervening petition which, they declared, "is friendly to the plaintiff, Asa Runyan," asserting that they are the owners of the whole estate in fee, and joined in the prayer for cancellation of the deeds referred to. Issue was made by the Pond Creek Coal Company and proof taken. The lower court dismissed the petition of the children at their cost. The deed from Jacob Runyan to

Arthur Bright was canceled. In effect the judgment left
the title where old man Asa Runyan placed it by his deed
to. Jacob in 1884. From this judgment the Pond Creek
Coal Company and the children appeal.

The complaint of the children is that the court failed
to adjudge ownership in them, and erroneously awarded
cost against them. While the pleadings filed by Asa
Runyan and the intervening petition by Jacob Runyan's
children show apparent conflict in claim, in this: Asa
Runyan claimed that the title reverted to him, while
the children assert unconditional ownership in fee, yet
the purpose of both was to divest the Pond Creek Coal
Company in their behalf. The children and their grand-
father understood each other thoroughly, and his evi-
dence shows that he did not intend to assert any claim
hostile to theirs, and their joint purpose was to cancel
the deed made by Jacob Runyan. In the accomplishment
of this purpose, the lower court evidently concluded that
the filing of the intervening petition by the children was
unnecessary, for, under the prayer of Asa Runyan's peti-
tion, the court was enabled to give to the children all the
relief to which they were entitled. It was for this reason
that they were required to pay the cost on that branch
of the case, and we will not disturb the order.

When the deed from Jacob Runyan to Bright was
canceled that left the deed from Asa Runyan to their
father in full force, and it required no judgment of the
court to declare ownership of same in them. No one
disputed that they were the heirs-at-law of Jacob Run-
yan, and as such were entitled to all of Jacob Runyan's
interest in the land, but no more. In other words, the
restriction of alienation and the right of support are as
binding upon them as their father.

Numerous questions are presented on the appeal of
the Pond Creek Company. It says that the deed, when
fairly construed, permits a conveyance of the coals, and
limits the right of alienation to the surface only. It
argues that this construction is borne out by the further
clause imposing an obligation on Jacob Runyan to sup-
port the grantor, if need be. It may be true that in 1884,
when the deed was executed, the likelihood of an income
from coal mining was remote and that no thought of a
support was considered probable from anything but the
surface. But it would be just as reasonable to argue
from these conjectures that Asa Runyan never intended

to convey anything to his son but the surface. This construction would not be accepted by appellant. The deed says that he sold and conveyed to his son, "A certain tract or parcel of land," and the restricting clause says that his son "is bound to not sell said land." Since it appears that the restraint on alienation covers everything that the old man sold, we cannot accept appellant's interpretation.

It is next urged that Asa Runyan consented to the sale. This is supported by the proof that he had knowledge of it shortly after the sale was made. But mere knowledge does not amount to consent, and, unless other facts are shown by way of estoppel, such as, that he induced the purchaser to take the conveyance, it will not serve to validate the sale. No such facts appear in the record.

A short while after Asa Runyan conveyed to Jacob, he left that county and took up his residence 100 miles away. After that he never saw his son alive. News came to him that his son had made the conveyance to Bright, but no effort was made by Bright or any of his vendees to take possession, or to interfere with the possession of Jacob's children, and since purchase by Bright was made in the face of the recorded deed from Asa Runyan to Jacob, which denied the right to alienate, therefore, neither Bright nor his vendees can pose as innocent purchasers. We see no room for the application of the rule of laches or the statute of limitation. Jacob Runyan and his children were in possession all the time and the statute could not begin to run until some act of ownership or control was exercised by those claiming the coals against them. As we have seen, this did not occur until about the time suit was filed.

Appellant contends that the effect of this action is to claim a forfeiture and that forfeitures are not favored in law. His statement of the law is correct, but we do not understand the question is involved here. Appellant never had any interest in this land to forfeit. One may forfeit a right which at one time he was legally entitled to maintain, but this deed from Jacob Runyan to Bright was void because in direct conflict with Jacob's right to sell, and therefore no claimant thereunder ever acquired any right. If no rights were acquired there were none to forfeit or surrender.

There can be no question as to the validity of the clause in Asa Runyan's deed forbidding alienation and

his right to enforce it. It is not in conflict with Section 2360 Kentucky Statutes, which renders void an alienation in perpetuity, or for a longer time than "a life or lives in being at the creation of the estate." The restriction was limited to the lifetime of Asa Runyan. That it·was reasonable and enforcible there can be no doubt.

The case of Frazier v. Combs, 140 Ky., 77, is in point. Frazier, the grantor, reserved to himself enough of the rents and profits as might be necessary for his maintenance, "and conditioned further that the party of the second part (Combs) shall not have power to sell, grant or convey said lands during the lifetime of the party of the first part." In support of the doctrine that a restriction upon the alienation of property during the lifetime of the grantor is reasonable, the court cited the cases of Stewart v. Barrow, 7 Bush, 358: Harkness v. Lisle, 117 S. W., 264; and Lawson v. Lightfoot, 27 Ky. L. R., 217.

In conclusion the court said:

"In the case at bar the restriction is limited to the life. of Solomon Frazier, who reserved to himself the life estate in the property. This, in our opinion, is a reasonable restriction upon the alienation by the son whom the father evidently intended to protect by preventing him from disposing of the property until he arrived at an age of more mature judgment."

For the reasons indicated, the judgment of the lower court is affirmed on both the original appeals and cross-appeal.