## Kentland Coal & Coke Co., et al. v. Keen, et al.

(Decided March 7, 1916.)

### Appeal from Pike Circuit Court.

1. Deeds—Restraint Upon Alienation.—It is permissible in this State for a grantor or testator to impose a restraint upon alienation by way of condition subsequent, but this may not be for a longer time than the life of some person other than the vendee or devisee, and if the restraint is longer than this, or for the life of the vendee or devisee, it is unreasonable and void.

2. Deeds—Forfeiture.—In the absence of a limitation over on condition broken, the right to proceed for forfeiture is in the grantor or his heirs and this right must be exercised during the time through which the prohibitive act is imposed by the condition, and if this right is not exercised by such person or persons within such time, the deed made in violation of the condition becomes absolute, as such deeds are voidable and not void.

3. Deeds—Insane Persons.—A deed executed by one who is non compos mentis at the time is valid as to a subsequent bona fide purchaser for a valuable consideration, provided at the time of its execution the grantor had not been adjudged to be a person of unsound mind.

4. Deeds—Evidence.—Testimony examined and found insufficient to show that the grantor was at the time of the execution of the deed in this case so mentally unsound as to render him incapable in law to execute it.

J. C. CLINE, HAGER & STEWART, AUXIER, HARMAN & FRANCIS for appellants.

F. W. STOWERS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The purpose of this suit, which was brought in the court below by appellees, being the children and heirs at law of George W. Keen, is to obtain a cancellation of the deeds by which appellants, Kentland Coal & Coke Co., and G. E. Rowe, who were defendants below, hold title to the land in dispute, and to have the court adjudge them to be the owners of the tract of land containing 208 acres. The facts are these: On the 17th day of December, 1880, Harper Keen, the father of George W. Keen, conveyed the fee simple title to the land to the latter, but in that deed there was inserted this clause: "And said George Keen is not to sell this land in my (Harper Keen's) lifetime." On January 9, 1892, and while Harper Keen was still living, George W. Keen and his wife executed an absolute deed to the land to one W. H. Justice, and by mesne conveyances, consisting of some eight or nine, the appellant, G. C. Rowe, became the owner of the surface of the land, and the appellant, Kentland Coal & Coke Co., became the owner of the mineral under the land and all the mineral rights incident thereto, and were such at the time this suit was filed.

The relief is sought upon the two grounds as alleged, that, (1) the deed executed by George W. Keen to W. H. Justice on January 9, 1892, was, because of the prohibitive clause above, absolutely void at the time it was executed and was wholly ineffectual to convey any kind of title or interest to the grantee Justice, and as a consequence all subsequent conveyances were likewise null and void. (2) That the father of appellees, George W. Keen, at the time he executed the deed to Justice, was *non compos* and wholly disabled mentally from realizing the import of his act, and therefore his deed was ineffectual to pass the title to the land, it being claimed that his grantee had knowledge of his mental condition. Upon a submission of the cause the trial court sustained the first contention made by appellees and, not only cancelled the deeds of appellants, but also cancelled all intervening deeds, although none of the parties to them were parties to the suit. It also by its judgment ordered the appellees before taking possession of the land to pay to W. H. Justice the consideration which he had paid their father for the land and adjudged it to be a lien thereon, all of which was done without Justice being made a party, or without any one asking that it be done. Com-

plaining of this judgment, the defendants prosecute this appeal, and appellees have prayed a cross-appeal from that portion of the judgment directing them to pay Justice the consideration which he paid to their father.

A consideration of the first question raised by the petition involves an inquiry into the nature, effect and scope of the inserted clause in the deed from Harper Keen to his son, George W. Keen, and also, what would be the effect if the restraint upon alienation attempted to be imposed by it should be violated by the grantee during the lifetime of the grantor?

That this clause creates what is known in the law of real estate conveyances as a *condition subsequent* there can be no doubt. This is so manifest as to be at once accepted without the citation of authorities. It is well known that this character of condition is disfavored in the law because its tendency is towards an impairment of the fee and in derogation thereof; consequently, the common law, as well as modern courts, have construed such stipulation, wherever the language used was sufficiently ambiguous to justify it, as covenants between the grantor and the grantee and not as conditions subsequent. Devlin on Real Estate Deeds, sections 970b, 970c, and the many cases referred to in the notes thereto. However, where the language used is plain and unambiguous, and the intent of the grantor clear, it will be construed to be a condition subsequent.

The rule, as stated by the author of the work on Deeds, *supra,* in section 970d, is: "The general rule undoubtedly is that courts will incline to construe the language, wherever it is possible to do so, into a covenant rather than a condition. Still if it is the clear intention of the parties to create an estate upon condition subsequent, the courts must give effect to the intention of the parties."

Restraints upon alienation imposed by conditions subsequent may be *absolute* or *partial,* and wherever absolute, unless there is a limitation over of the fee after breach, they are void. (Littleton, section 360; vol. 24; Am. and Eng. Cyc. of Law, page 867; Devlin on Deeds, sec. 965; Lawson v. Lightfoot, 27 Ky. Law Rep., 217; Harkness v. Lisle, 132 Ky. Rep., 767; Stewart v. Brady, 3 Bush., 623; Stewart v. Barrow, 7 Bush., 368; Rice v. Hall, 19 Ky. Law Rep., 814; Kean v. Kean, 13 Ky. Law

Rep., 956; Johnson v. Dumeyer, 23 Ky. Law Rep., 2243; Morton's Guar. v. Morton, 120 Ky., 251.)

This court, however, has upheld the validity of conditions subsequent imposing a partial restraint upon alienation perhaps to a greater extent than any other state in the Union.

This is shown by the opinion of this court in the case of Lawson v. Lightfoot, *supra,* from which we quote as follows:

"It must be conceded that the great weight of authority outside of Kentucky is to the effect that where the fee simple title to real estate passes under a deed or will, any restraint attempted to be imposed by the instrument upon its alienation by the grantee, or devisee, is to be treated as void, and such is clearly the rule announced by Mr. Gray in his excellent work on "Restraints of Alienation." But the contrary view has been adopted by this court in repeated decisions, beginning with Stewart, etc. v. Brady, 3 Bush, 623, and ending with Wallace, etc. v. Smith, 24 Ky. Law Rep., 139; Stewart v. Barrow, 7 Bush., 368; Rice v. Hall, 18 Ky. Law Rep., 814; Kean v. Kean, 13 Ky. Law Rep., 956; Johnson v. Dumeyer, 23 Ky. Law Rep., 2243.

"In other words, the accepted doctrine in this State is that restraints upon alienation may be imposed for a reasonable period. This court has, however, never fixed a limit to such restraint, but in Stewart v. Brady, *supra,* it was held that a devise of land to the testator's daughter, with the limitation that it should not be disposed of by her until she became 35 years of age, was reasonable, and in Kean v. Kean, 13 Ky. Law Rep., 956, it was held that a restriction accompanying a devise of real estate to a son of the testator that should not have the power to dispose of it until he became 28 years of age, was good. If such a restriction may be imposed for the periods indicated by the cases, *supra,* why may it not endure for a longer time, or, as contemplated by the testator in this case, during the life of his widow, the tenant for life of the real estate, the alienation of which is attempted to be restricted?"

This case was followed by that of Harkness v. Lisle, *supra,* in which the Kentucky doctrine of upholding a partial restraint upon alienation as imposed by conditions subsequent was upheld to the extent that the limit upon such partial restraint might be for a period

during the life of the grantor or perhaps of some third person, but denied the restraint to be extended to the life of the grantee or devisee. The language of this court in so holding is as follows:

"Here the testator attempted to impose a restraint upon alienation, not for a specified period of time, nor until the devisee arrived at a certain age, but during the entire lifetime of the devisee. The general rule is that the right of alienation is an inherent and insep- arable quality of every vested fee simple title. To hold that alienation could be restrained during the lifetime of the fee simple holder would be to deprive the fee of all its essential qualities. As said by Littleton: 'If such a condition be good, then the condition should oust him of all power which the law gives him, which should be against reason.' While bound by the former adjudi- cations of this court to adhere to the doctrine that a limitation for a reasonable length of time is valid, we have no hesitation in saying that the limitation at- tempted to be imposed by the will in question is unrea- sonable. A testator cannot devise a fee, and then de- stroy it entirely. We therefore conclude that clause 15 of the will is invalid."

See also Chappel v. Frick Co., 166 Ky., 311.

It will be seen therefore that the settled doctrine in this State is to the effect that the clause restraining the right of George W. Keen is a condition subsequent, and this restraint being limited by the life of the grantor, in this State is valid. What then are the rights of the parties if this restraint is violated or condition broken during the lifetime of the grantor and he at no time made any effort to re-enter after condition broken, or to take any steps to have a forfeiture declared?

A proper solution of this question is dependent upon the still further one as to who can take advantage of a broken condition subsequent? There is no room for dispute in cases where there is a limitation over after condition broken. Manifestly, in such cases the person, to whom the estate is made by the limitation over or his heirs would be the proper ones to re-enter or proceed for a forfeiture. In the instant case there is no limi- tation over. In such cases the grantor in the deed con- taining the limitation or his heirs are the only ones who can take advantage of a breach. This rule is laid down by all authors upon the subject and is expressed by the

author of the work on Deeds, *supra,* in section 967, as follows: "No one can take advantage of a breach of a condition subsequent but the grantor or his heirs. If they do not take steps to enforce a forfeiture of the estate on the ground of a breach of the condition, the title remains unimpaired in the grantee."

And again the rule is stated in 13 Cyc., page 706, as follows: "A breach of condition subsequent in a deed does not *ipso facto* operate to determine and revest the estate, but the same remains in the grantee subject to be defeated only by some sufficient act at the election of the grantor or his heirs. So a provision that the title shall revert is not self-executing where the title passes absolutely by the deed, and the clause is only a covenant. Again, where a purchase is made under color of lawful authority and at a time when the law was presumptively valid it must be regarded as having been lawfully made, and the fact that the law is subsequently declared unconstitutional, thereby preventing performance, does not *ipso facto* revert title in the grantor under a condition to that effect, the failure to perform merely making the deed voidable."

The text is fortified by many authorities from various states of the Union, including the Kentucky case of Kenner v. American Contract Company, 9 Bush, 209. In that case Kenner conveyed to the railroad company a right of way over his farm for the purpose of constructing a railroad, but provided that if the people of Christian county should subsequently "vote a tax for the building or completion of said road, then this contract to be null and void." The people of the county did subsequently vote a tax for that purpose, but in the meantime Kenner had died. He lived, however, a number of years after executing the deed, during which time the road was constructed, and three years after the voting of the tax the heirs of Kenner, including his widow, brought the suit to recover damages from the railroad company charging that the happening of the event, which was the voting of the taxes, rendered the conveyance void, *ipso facto,* and converted the occupancy of the right of way by the railroad company into a trespass, and it was sought to be made to respond in damages for this supposed trespass. The plaintiffs failed in the trial court, and that judgment was affirmed by this court.

In declaring the effect of a breach of a condition subsequent, as well as what is requisite to complete the forfeiture, this court in that opinion said:

"It is insisted by counsel for appellee that this action cannot be maintained unless there was an entry upon the premises by either the grantor or his heirs after the condition was broken. The effect of a subsequent condition is either to enlarge or defeat an estate already created, or, in the language of Chancellor Kent, 'Such conditions operate to defeat estates already created, and there must be an actual entry in order to defeat the livery made on the creation of the particular estate, and although there is a breach of the condition, it does not defeat the estate until an entry is made by the grantor or his heirs.' (4 Kent, 159.) 'Regularly, where a man will take advantage of a condition, if he may enter, he must enter, for, an estate of freehold or inheritance will not cease without entry or claim.' (1 Sheppard's Touchstone, p. 153.) 'Where an estate is upon condition in deed, and to be void provided the grantee goes to York, the law permits the estate to continue beyond the time when the contingency happens, unless either the grantor or his heirs make an entry or claim in order to avoid the estate.' (2 Blackstone, p. 155.)

"This doctrine is well settled at common law that no freehold or fee simple estate can be destroyed by the breach or non-performance of a condition subsequent, unless there is an entry by the grantor or his heirs after the breach, or some claim equivalent to it."

That a deed made in violation of the restraint upon alienation found in the condition subsequent is voidable and not void in the absence of a limitation over is recognized by all of the text writers, and so far as we are able to learn, all the courts of last resort in this country. It is stated in volume 13, Cyc., page 711, as follows:

"The grantor may elect to re-enter for breach or non-performance of the conditions annexed to his deed.

"Upon a breach or non-performance of a condition annexed to the grant of a freehold estate, the title conveyed is not void but is only voidable by the act of the grantor or his heir, who must take advantage of the condition and repossess himself of the estate by actual re-entry; or by some act equivalent thereto and manifesting an intent to terminate the estate. This rule applies even though the land is expressly conditioned to

revert upon breach or non-performance of the condition. But ejectment may be maintained without previous entry, demand, or notice. And re-entry is unnecessary where the grantor or his heirs retain possession, but such party must manifest an intent to hold possession.''

According to some of the authorities to which we have referred herein the right of re-entry, or to proceed for a forfeiture, must be exercised by the person in whom it lies within a *reasonable time* after the breach, and certainly must it be exercised within the lifetime of the one who possesses the right when the limit of the restraint imposed by the condition is measured by his life. The right of such a one under such conditions to insist on the breach is not an estate, but only a personal privilege to reclaim the land at any time after breach within the time limiting the restraint. If it is not exercised within such time the right is gone and the title becomes absolute in those to whom the conveyance was made.

We have found no decision in conflict with these views, except two comparatively recent cases in this court wherein the opinions seem to hold that the deed executed in breach of the partial restraint is absolutely void and conveys no title whatever and is not effectual for any purpose, these cases being: Frazier v. Combs, 140 Ky., 77, and Pond Creek Coal Co. v. Runyan, 161 Ky., 64. The first case mentioned was decided on September 28, 1910, and the other one was decided on November 17, 1914. The deed involved in the Frazier case was not so absolute in its nature as the one involved in the instant case, the clause considered in that case being as follows: ''Conditioned that the party of the first part reserves unto himself the full control of the said property during his natural life and all the rents, profits and proceeds thereof that are necessary for maintaining the party of the first part during his life, and conditioned further that the party of the second part shall not have power to sell, grant or convey said lands during the life of the party of the first part, but shall after the death of the party of the first part be seized of an indefeasible title to the lands herein described forever.''

It will be observed that the grantor in that deed expressly reserved unto himself the full control of the property during his natural life which was done for his

maintenance, and in the subsequent part of the clause it was expressly stated that the grantee should not be seized of an absolute fee until after the death of the grantor. These differences might be held to inject different features in that deed from those in the one we now have under consideration. But, however that may be, the opinion proceeds upon the idea that the attempted conveyance constituting the breach was absolutely void, and that the right to insist upon the forfeiture survived to the children of the grantee (who committed the breach) and permitted them to maintain an action to recover the land from a remote grantee.

In the Runyan case, the suit was brought by the grantor in the deed containing the restriction after the breach of the condition and of course during his lifetime, the children of the grantee in that deed becoming parties to the suit by intervening petition. In disposing of the question presented this court therein said:

"Appellant contends that the effect of this action is to claim a forfeiture and that forfeitures are not favored in law. His statement of the law is correct, but we do not understand the question is involved here. Appellant never had any interest in this land to forfeit. One may forfeit a right which at one time he was legally entitled to maintain, but this deed from Jacob Runyan to Bright was void because in direct conflict with Jacob's right to sell, and therefore no claimant thereunder ever acquired any right. If no rights were acquired there were none to forfeit or surrender."

It will be seen that in these two cases the rule is stated that the deed executed in violation of the condition is *void* instead of *voidable,* being directly in conflict with the rule as stated by the authorities to which we have referred. In doing this, we are constrained to believe that this court in the two opinions mentioned unintentionally departed from the universal rule upon the subject. We fully appreciate the doctrine and the office of the maxim, *stare decisis.* An adherence to it is necessary to preserve the uniformity of the law, and where the questions determined by the earlier decisions, in their origin were doubtful, or were not so far-reaching as to affect the rules governing the acquisition and transmission of real property, the courts should, and do, apply it; but the rule is not so strictly observed where the questioned decision is of recent utterance,

nor is the maxim itself always imperative or necessarily binding. (Vol. 11, Cyc., 745; Montgomery Fiscal Court v. Trimble, 104 Ky.; 629.)

In the volume of Cyc., *supra,* 749, the circumstances governing the application or non-application of the maxim are stated thus:

"Although the rule of *stare decisis* is entitled to great weight, and is adhered to in most courts, yet it is not followed to the exclusion in all cases of a departure therefrom, and it is a doctrine generally recognized that the rule will not be invoked to sustain and perpetuate a principle of law which is established by a series of decisions, clearly erroneous, unless property complications have resulted therefrom, and a reversal would result in greater injury and injustice than would ensue by following the rule. But the rule should not be departed from except on the fullest conviction that such an error has been committed." (See also as bearing upon the point Pratt v. Breckenridge, 22 Ky., Law Rep., 1356; Tribble v. Taul, 7 T. B. Mon., 455; South v. Thomas, 7 T. B. Mon., 59.)

The limitations of the binding force of the maxim are well stated by the Supreme Court of Colorado in the case of Calhoun Gold Mining Co. v. Ajax Gold Mining Co., 83 American State Reports, 17, as follows:

"We understand, generally, that when a decision has established a settled rule of property, upon which rights are predicated (and especially those relating to real estate), the law will be adhered to by the court announcing it and those bound to follow its adjudications, even if erroneous (Black on Interpretation of Laws, sec. 152), but this rule is not inflexible. Courts are not bound to perpetuate errors merely upon the ground that a previous erroneous decision has been rendered on a given question. If it is wrong, it should not be continued, unless it has been so long the rule of action, and relied upon to such an extent, that greater injustice and injury will result by a reversal, though wrong, than to observe and follow it. Black on Interpretation of Laws, sec. 152; Sutherland's Statutory Construction, sec. 316; Boon v. Bowers, 30 Miss., 246, 64 Am. Dec., 159."

As we have seen the rule concerning the nature of conditions subsequent in conveyance of real property, as well as the one governing the rights of the parties upon breach of the condition, are each well rooted and

anchored in the law, beginning with the earliest writers upon the subject and followed, without dissent, by their successors and by practically, if not all, courts of last resort, including our own. These rules are bottomed upon sound reasoning and are a part of the common law of England and this country. Property has been acquired and transferred for more than a century on the faith of their continued existence. To depart from them now would result in great confusion, as well as to mar the symmetry of the law. Such a course is not enjoined upon us by the doctrine of the maxim under consideration, although its application to conditions for which it had its origin and to meet which it was first invoked is fully recognized and appreciated by us. Entertaining these views, we are constrained to and do hereby overrule the two cases referred to in so far as they hold that the character of deed here involved is void, and in so far as they vest a right of action in the heirs of the grantee for a breach committed by him, whereby his estate is defeated.

It therefore results that the deed executed by George W. Keen to W. H. Justice was not void but voidable, and it not having been avoided by any act or proceeding of Harper Keen during his lifetime, the title conveyed by it becomes absolute, nothing else preventing.

We come now to a consideration of the second claim of the appellees, it being the alleged unsoundness of mind of George W. Keen at the time he sold the land to Justice. It will be remembered that this deed was made on the 9th of January, 1892. With the considera- paid him, George Keen purchased other land upon which he moved and resided until his death in March, 1912, more than twenty years from the time the deed to Justice was executed. He is shown by the testimony to have been a man of irritable temper and sometimes in fits of anger he would act abnormally. He operated the farm upon which he lived and passed in and out before his neighbors and acquaintances and engaged in trades and transactions such as a man of his circumstances ordinarily does, and but few if any persons noticed anything in his actions or condition indicating feebleness of mind until about the year 1904, when from some cause he attempted to commit suicide by cutting his throat. It is shown that he had frequent quarrels with his family and entertained a great dislike for those supposed

to be his enemies. Some two or three years after the effort to commit suicide he was placed in the insane asylum, but what the proof showed upon that trial we are not informed, nor is a copy of the judgment rendered at the inquisition placed in the record. The rule is that although one's mind may be impaired by anger or other causes temporarily, still they may at other times posses sufficient mind to make a valid contract, including a sale of realty, and if the contract in question was made before inquisition, the presumption is that it is valid, and when made under such circumstances, an innocent party who in due course and for a valuable consideration acquires the title, does so free from the right of the grantor or his heirs to defeat it, the deed when made before inquisition being voidable and not void. 22 Cyc., 1171; Breckenridge v. Ormsby, 1 J. J. Marshall, 236; Ornett v. Owens, 23 Ky. Law Rep., 1403.

The evidence does not by any means convince us that George W. Keen did not have mind sufficient to execute the deed on January 9, 1892, but if we are mistaken in this, there is an utter failure to show by any character of testimony that the appellants or their vendors had any knowledge as to his mental condition at that time. Moreover, there was no effort in this case to return or offer to return the consideration which George W. Keen received for the land. So that in no view of the case can we find any ground upon which the judgment may be upheld. As the judgment now stands, the appellees are ordered to pay to W. H. Justice the consideration which he paid their father for the land and which is questioned by the cross-appeal.

It results that the judgment should be and is reversed on the appeal and on the cross-appeal with directions to set it aside and to dismiss the petition.

Whole court sitting.