## Peterson v. Commonwealth ex rel. Meredith, Atty. Gen.

March 24, 1944.

Smith & Leary for appellant.

Hubert Meredith, Attorney General, for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER
—Reversing.

The action was instituted by appellee, Commonwealth of Kentucky, on relation of Hubert Meredith, its Attorney General, against appellant, Frank D. Peterson, individually, and as Comptroller in the Division of Accounts and Control in the Department of Finance of the Commonwealth of Kentucky, to recover an amount equal

to the salary paid one Shively Whitlock by the Commonwealth from the first day of August, 1939 to the first day of February, 1941. The petition alleges that during the time aforesaid Whitlock was not capable of performing, and actually did not perform, any service for the Commonwealth of Kentucky; but, despite this fact, appellant Peterson officially certified that Whitlock had rendered to the Commonwealth the services for which he was paid. It is further alleged that such certification was made with the knowledge on the part of the appellant that Whitlock did not render the services so certified. The answer, in substance, denied the allegations of the petition and affirmatively alleged that on all the occasions that Whitlock was absent from duty and failed to perform the services assigned to him by his department, he was absent on vacation earned by him, or by leave because of illness, in accordance with the rules and policy of the Commonwealth in respect to him and all other employees; and such absences as were occasioned by illness did not exceed the accumulated leave for such purposes, in accordance with the rules and regulations of the Department of Finance and all other departments of the Commonwealth of Kentucky, and that all other absences did not exceed the leave accumulated to Whitlock's credit for vacation. The issue was joined by a reply. On the trial, the jury returned a verdict in favor of appellee against appellant in the sum of One Thousand Dollars ($1,000), upon which judgment was entered, and from which this appeal has been prosecuted.

The evidence shows that Whitlock was addicted to the use of intoxicating liquor; that on the twenty-sixth day of September, 1939, he was arrested on a charge of breach of the peace, and was confined to the county jail on that day, and remained therein throughout the following day, when he was discharged from custody. That on the night of the tenth of November, 1940, he was arrested on a charge of drunkness and confined to the county jail, where he remained until the fourteenth day of November, 1940, when he was discharged. That on the evenings of October 12, 1939, December 30, 1939, January 21, 1940, February 17, 1940, February 18, 1940, and July 2, 1940, he was arrested for drunkenness and placed in the city workhouse, where on each occasion he remained until the following morning. In respect to these confinements, the superintendent of the workhouse testified: "Probably he would come like this evening

and be out in the morning.'' The evidence, with the exception of the testimony of one witness, which hereinafter will be detailed, shows that Whitlock did practically all of his drinking at night; but this was so frequent and constant that he developed the disease known to medical science as chronic alcoholism, resulting in his voluntary commitment to the Eastern Kentucky Hospital at Lexington, Kentucky, on the twenty-fifth day of August, 1940. He was conveyed to the hospital by appellant Peterson, who is his brother-in-law, and who on the twenty-sixth day of August, 1940, swore to a warrant charging him with lunacy (addiction to drugs), in accordance with the provisions of Sections 216aa-64 to 216aa-67 inclusive, Carroll's Kentucky Statutes. Upon trial of the charge contained in the warrant, he was involuntarily committed to the institution to which he had committed himself, and wherein he remained until the fifth day of October, 1940, when he was released. He returned to work for the Commonwealth the following morning. No trial was ever had for the purpose of adjudging him sane. There is no evidence or testimony that he was absent from work, or that he failed to perform his duties, on any other specific occasions than those enumerated above. The only other testimony in the case to the effect that he did not at all other times perform efficiently and in full the duties assigned to him, was that given by the witness, Z. L. Allen, who, it would seem from his own testimony, had cause for bearing Whitlock ill will, growing out of a fisticuff, or ''bottlecuff,'' resulting in Whitlock's striking the witness in the face with a Coca-Cola bottle and dislodging permanently several of his front teeth, and as a result of which Whitlock was arrested on the charge of breach of the peace heretofore referred to on the twenty-sixth day of September, 1939. Allen is the custodian of the office building in which Whitlock worked. He was asked:

''Q. During that period (the year 1940), was he (Whitlock) performing his work for the State with that duplicating machine? Do you know about the whole of last year, 1940? A. Yes.

''Q. What about that? Did he perform his work there, or not, during that year? A. Well, I never saw him do much work.

''Q. Well, what did you see him do? A. Just what do you mean by that?

"Q. Well, was he in a condition to do his work—drunk or sober? A. Wasn't all the time, he wasn't, no, sir.

"Q. In what condition was he in that made him so that he could not perform his work properly? A. Well, he was drunk.

"Q. During that period of time mentioned, did you help or assist in removing him from his place of work, or not? A. Removing him from what?

"Q. From this room where the duplicating machine was, getting him out of the way and out of the building? A. I had some warrants sworn out for him while he was in there once and the police came up there and got him.

"Q. What was that for? A. Well, he was drunk upstairs threatening me about something; I don't know what; Judge Hamilton will tell you about that. This gentleman over there, The County Attorney, will tell you about it, too.

"Q. State whether or not during the period I have asked you about, he performed any services for the State in connection with that duplicating machine. A. I seen him do some work, yes, sir. ·

"Q. What portion of the time did he work and what portion of the time did he not work during that period? A. Well, I am throwed in there occasionally, I see him around there. Sometimes he was at work and sometimes he wasn't.

"Q. Who generally performed the work of handling that duplicating machine? A. A fellow by the name of McAdams; I don't know his first name.

"Q. And who, if anyone, assisted him? A. I have a 'trusty' that I give him.

"Q. A 'trusty' helped him? A. Yes.

"Q. When McAdams was doing the work, what would Whitlock be doing? A. Do I have to answer that?

"By the Court: If you know, yes, sir.

"A. Well, I can see him out on the grounds or upstairs or going across town somewhere else, what time, I don't know,— well, if you want to know it, he was just drunk the biggest end of the time.''

On cross-examination, he was asked:

"Q. Did you and Whitlock have a fight and have some personal difficulty? A. I did. He knocked these teeth out with a Coca-Cola bottle."

It was shown that Allen was the custodian of the State Office Building, in which Whitlock worked, the Welfare Building nearby, the Old Capitol Building and its annex, and a part of the time was custodian of the New Capitol Building. It was likewise shown that, in addition to the duties of assisting McAdams on the duplicating machine, Whitlock was required to deliver multigraphed forms to various departments of the State, which would require him to leave the State Office Building from time to time. That his duties at the multigraph machine were irregular, depending upon the needs of the various departments of government for forms, pamphlets, and other literature; that a portion of the time the multigraph machine was not in operation, whilst at other times its operators were required to work late into the night to complete the work requisitioned. McAdams was not introduced as a witness at the trial. Although on the morning of the trial the Attorney General had process issued for McAdams, no timely steps were taken to have him present as a witness. The Sheriff, to whom the process was directed, reported on the morning of the trial that he had been informed that McAdams was in Louisville. The only other superior of Whitlock to testify in the case was Peterson himself, who testified that, so far as he knew, with the exception of the specific dates enumerated above, Whitlock was present and performed the duties assigned him.

At the outset, it will be noted that the action is to recover for the Commonwealth certain sums of money it is alleged were paid to Whitlock for services performed for the Commonwealth, upon the allegation that such services were not actually performed. That being the gist of the action, it devolved upon the Commonwealth to prove the nonperformance of the services. A mere showing that the employee was addicted to the use of alcoholic beverages is not sufficient to sustain the allegation that he did not perform the work for which he was paid, unless it be specifically shown that such work in truth was not performed. The record fails to show that Whitlock was absent from his post of duty at any time except on the twenty-sixth and twenty-

seventh days of September, 1939; the tenth, eleventh, twelfth, thirteenth, and fourteenth days of November, 1939; and the forty-two day period commencing August 25, 1940 and ending October 5, 1940. It is true that it is shown that on six other occasions he was arrested for being drunk, and was incarcerated in the city workhouse; but the superintendent of the workhouse testified, in effect, that he was placed there in the evenings and released the following mornings. It was not shown by the Commonwealth, upon whom the burden rested, that Whitlock did not perform efficiently all duties assigned to him on the day of the morning he was released from custody on these six occasions. The testimony of Z. L. Allen is not sufficiently specific or definite for us to conclude that Whitlock did not perform the work for which he was paid on any occasions other than the forty-nine days which it is admitted he was in jail or in the Eastern State Hospital. Allen's testimony shows that he had only an occasional opportunity to observe Whitlock at his post of duty; that some of the time he was working and some of the time he was not. This testimony is perfectly consistent with the evidence for appellant to the effect that Whitlock's work did not require him to be busy every minute during the ordinary hours of a working day. The work assigned to him was of such a nature as required him to be on duty at all times, but not necessarily occupied at the machine to which he was assigned. His duties likewise entailed his departure from the office, and personal visits to various departments of the State located in various parts of the City of Frankfort. It might be that the occasions Allen testified he saw Whitlock away from his office were the very times he was required to journey to other offices in the performance of his duties. Allen's statement that Whitlock was drunk "the biggest end of the time" is too indefinite and conclusory to prove the specific allegation that he did not actually perform the work for which he was paid. It is obvious, therefore, that the court, in his instructions to the jury, should have limited the amount of recovery, in any event, not to exceed the salary paid him for the forty-nine days it was shown he actually did not perform services for the State.

But appellant insists that he should be exonerated from liability for the payment of Whitlock's salary even for the forty-nine days it was shown the latter was absent from his post of duty, upon the theory that under

the regulations of the department he had accumulated forty-three (43) days' sick leave, forty-two (42) days of which it was shown conclusively by the evidence that he was ill, suffering from the disease of chronic alcohlism; and that the remaining days were within the number of days he had accumulated for vacation, and upon which he should not be required to account to the Commonwealth for his conduct. But we are of the opinion that neither of these contentions should be sustained. Whilst we realize, as was conclusively proven by the medical testimony in the case, that one suffering with chronic alcoholism is actually suffering from a disease, and by reason of that fact is ill; nevertheless, we are of the opinion that the regulation of the Department did not contemplate that one be granted a leave of absence from his work by reason of an illness superinduced by his own intemperate conduct, and for which his wilful vicious habits were solely responsible. In adopting the regulation permitting employees to be absent from their work on the average of one day for each month of service, the Department had in mind such illness as could not, by foresight, have been prevented by the person seeking to be relieved of his duties. Such a construction we conceive to be in accord with the intent of the Department in adopting the regulation. And, whilst we recognize the fact that the Department would have no just cause of complaint if one spends his entire vacation in a drunken stupor; nevertheless, we are of the opinion that leave of absence granted employees of the State in which to take vacations was not granted for the purpose of permitting one who has been required to remain away from his place of duty because of drunkenness to fall back upon the regulation in respect to vacations as an exoneration of his failure to report for duty at such times as it was anticipated by the Department he would be on hand. The Commonwealth, no less than an individual employer, is entitled to notice, if such may be reasonably given, that an employee will be absent from his work, in order that the services of a substitute may be obtained to perform the services which would otherwise be neglected. If unforseen or unavoidable circumstances should cause an employee to be absent, he should not be held to the same accountability exacted of him in circumstances where his own wilful act causes his absence. If a regulation of a department of government should set out specifically that twelve times each year an employee would

be entitled with pay to remain away from work on account of drunkenness without notice to his superior in authority, or that an employee should be granted forty-two days with pay in each three and one-half (3½) years in which to recuperate from an illness brought about by a wilful pernicious habit, we would be constrained to hold such regulation to be unenforceable as against public policy, in the absence of an act of the legislature to the contrary; and we dare say appellant would not seriously question the soundness of such a decision. It follows that the regulation under consideration, if susceptible of such construction, likewise would be unenforcable. The construction most favorable to appellant's contention that it is possible for us to place upon the sick leave regulation is that it is ambiguous, in respect to its application to cases where the illness is a direct result of intentional and wilful misconduct of the person claiming the leave. Where an instrument is so ambiguous as to be susceptible of two constructions, one of which would nullify it and the other preserve it, the latter will be given; to save and not to destroy being the cardinal principle of judicial construction. Bloemer et al. v. Turner et al., 281 Ky. 832, 137 S. W. (2d) 387. We therefore are of the opinion that appellant improperly approved payment to Whitlock for the forty-nine days it was shown by the evidence he failed to report for duty.

It is insisted by the Attorney General that, since the judgment of the Franklin County Court declaring Whitlock to be insane was not set aside during the time he remained in the employ of the State, it will be presumed by the court that he continued to be insane until his employment terminated, and therefore incapable of performing any duty for the State. Conceding, without deciding, that such presumption should be indulged, it was conclusively proven by the doctors who testified that Whitlock was perfectly sane upon his discharge from the Eastern State Hospital, and at that time was capable of performing in full the services for which he was paid.

Under the evidence presented by this record, the court should have peremptorily instructed the jury to find for appellee in an amount equal to the salary paid Whitlock for the forty-nine days he was absent from his post of duty. Since the verdict of the jury in favor of appellee in the sum of One Thousand Dollars ($1,000)

was not supported by the evidence, it is reversed for proceedings consistent with this opinion.

Whole Court sitting, except Judge Cammack.