**CITIZENS FIDELITY BANK AND TRUST COMPANY, et al., etc., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 4075.**

United States District Court
W. D. Kentucky,
at Louisville.

Aug. 29, 1962.

John Marshall, Jr., Peter, Heyburn & Marshall, Louisville, Ky., for plaintiffs.

William E. Scent, U. S. Atty., Louisville, Ky., for defendant.

BROOKS, Chief Judge.

Plaintiffs, co-executors of the estate of Mrs. Julia B. Heyburn, are seeking a refund of estate taxes paid as a result of a determination by the Commissioner of Internal Revenue that the value of certain shares of stock comprising part of Mrs. Heyburn's gross estate was greater than the value at which they were reported in her estate tax return. The sole issue in this action, which is submitted on the taxpayer's motion for summary judgment, is whether on the alternate valuation date one year after Mrs. Heyburn's death the shares in question were subject to a valid option agreement which, as a matter of law, fixed their value for estate tax purposes at ten dollars a share. It is the Government's position that there remains a genuine issue of material fact as to the value of these shares because the option agreement is void under Kentucky's laws regarding perpetuities and unreasonable restraints on alienation.

The relevant facts bearing upon this issue have been established by the pleadings and a stipulation. In 1940 William Heyburn Estate, Inc. was formed to ac-quire, improve, and manage certain business property then owned by Mrs. Heyburn and the executors of her husband's estate, and from one week after incorporation each of Mrs. Heyburn's three sons served as an officer and director of the corporation without being compensated for his services. Mrs. Heyburn owned 10,401 of the outstanding shares of stock, and the remaining shares were owned by her sons and the trustee under her husband's will. On July 31, 1943 the book value of this stock was $10.80 a share. It has been stipulated that on August 7, 1943 Mrs. Heyburn, who was then seventy-four or seventy-five years of age, and her sons entered into an option agreement, the recited purposes of which, among others, were to secure the sons' continued services to the corporation for the remainder of Mrs. Heyburn's life and to give them an opportunity to acquire her equity in the company. The working part of the agreement is hereinafter quoted at length:

"1—Mrs. Heyburn agrees that she will, at any time upon the request of any of her said sons, sell, assign, transfer, and deliver to the one so requesting her to do so 3,467 shares of the common capital stock of Wm. Heyburn Estate, Inc., standing in her name on the books of said corporation, in consideration of the payment to her of the sum of $34,670.00, and that she will not, during her lifetime, sell, assign, pledge, transfer, or deliver any of said stock to any one else so as to disable herself from carrying out said agreement.

"In the event any of the parties of the second, third, or fourth part shall request Mrs. Heyburn, or her Executors, to sell him 3,467 shares of the common stock of the Company, as hereinabove provided for, such request shall be made in writing and a copy thereof delivered to each of Mrs. Heyburn's other sons, or to the executors of any of them who may have died.

"2—In consideration of the foregoing, the parties of the second,

third, and fourth part, and each of them, do hereby agree that, if elected to serve as Directors, or Officers, of the Company, they will do so without compensation for the services rendered by them in either of said capacities during Mrs. Heyburn's lifetime, it being understood and agreed, however, that this shall not be deemed to constitute a waiver by the party of the fourth part, or any law firm of which he is a partner, of his, or its, right to receive reasonable compensation for legal services rendered by him, or by it, to the Company.

"3—It is mutually understood and agreed that the covenants and agreements contained herein shall be binding upon and inure to the benefit of each of the parties hereto, and the heirs, legatees, executors, and administrators of each of them."

Two of the three sons predeceased Mrs. Heyburn, but both had served as an officer and director of the corporation without compensation until their deaths. The third son was still serving in both of these capacities at Mrs. Heyburn's death on November 4, 1956, never having received any compensation for his services. At her death Mrs. Heyburn still owned the 10,401 shares of stock, and neither the sons nor the heirs or legatees of the two sons who predeceased Mrs. Heyburn ever exercised the option. Thereafter, the 10,401 shares were distributed in accordance with Mrs. Heyburn's will on September 2, 1959. The taxpayer elected to value Mrs. Heyburn's gross estate on the alternate valuation date one year after her death, and the shares in question were reported in the estate tax return at the option price of ten dollars a share. The Commissioner's determination that the option was void resulted in a deficiency assessment of $84,175.03, which was paid, and this suit for that amount plus interest followed.

■ It is first necessary to determine the period of time for which the parties agreed the option was exercisable and the period of time for which Mrs. Heyburn had agreed not to dispose of the stock or otherwise disable herself from performing her part of the agreement, and it is at once apparent that the agreement, which contains no express time limitation, is susceptible of more than one construction in this regard. It is the Government's contention that Paragraph 3 of the agreement makes the option exercisable forever—that is, that "heirs now undreamed of might exercise the option against generations yet unborn," but under an accepted rule of construction in Kentucky an interpretation which would render the agreement void and unenforceable is not favored. Peterson v. Commonwealth ex rel. Meredith, 297 Ky. 148, 179 S.W.2d 210; Berry v. Riess, 276 Ky. 114, 121 S.W.2d 942; Leslie County v. Maggard, 212 Ky. 354, 279 S.W. 335; Berry v. Frisbie, 120 Ky. 337, 86 S.W. 558; see Restatement, Contracts, Section 236(a) (1932). In addition, certain aspects of the agreement itself tend to negative the idea that this was to be a perpetual option. First, the emphasis throughout the agreement is primarily upon Mrs. Heyburn's life. Further, it is inferable that a testamentary disposition independent of the option agreement was contemplated by the parties, for the agreement only bound Mrs. Heyburn not to make any inter vivos transfers of the stock which would prevent her from performing her part of the agreement if the options were exercised. It is unlikely, then, that Mrs. Heyburn would agree to bind her heirs and legatees indefinitely when she was only to receive the benefit of her sons' services to the corporation for the remainder of her life.

■■ The question of the duration of the option agreement might end there but for the provision that the option was to be exercisable by written demand upon Mrs. Heyburn *or her executors*. Keeping in mind the accepted rule of construction in Kentucky that an agreement must be construed as a whole, giving effect to all parts and every word in it, if possible, Warfield Natural Gas Co. v. Cassady, 260 Ky. 548, 86 S.W.2d 276;

Roberts v. Huddleston, 259 Ky. 595, 82 S.W.2d 469; Chicago Veneer Co. v. Anderson, 105 S.W. 108, 32 Ky.Law Rep. 7; 17 C.J.S. Contracts § 297 (1939), it is concluded that the parties intended the option to be exercisable for a limited period of time after Mrs. Heyburn's death, and by implication from the use of the word "executors," that period was to be the time it might reasonably be anticipated would be necessary in the normal course of events for the administration of Mrs. Heyburn's estate. While it is true that Paragraph 3 purports to make the agreement forever bind and inure to the benefit of the heirs, legatees, executors and administrators of all the parties, it is concluded that the duration of the option period had been agreed upon in Paragraphs 1 and 2 and that Paragraph 3 was intended only to make the option inure to the benefit of heirs, legatees, executors and administrators of any son who predeceased Mrs. Heyburn and to make the option bind the heirs, legatees, executors and administrators of Mrs. Heyburn in the event the option was exercised during the limited portion of the option period after her death.

■ In various Kentucky cases over the years three different rules have been recognized as being applicable to agreements of this general type—(1) a rule against perpetuities based upon K.R.S. 381.220, (or its predecessor, Section 2360 (Ky.Stat.)) which, prior to its repeal in 1960, literally prohibited the suspension of the absolute power of alienation for a longer period than during lives in being and twenty-one years and ten months thereafter but which was held to be but a codification of the common law rule against remote vesting, Taylor v. Dooley, Ky., 297 S.W.2d 905; Maddox v. Keeler, 296 Ky. 440, 177 S.W.2d 568, 162 A.L.R. 578; Cammack v. Allen, 199 Ky. 268, 250 S.W. 963; see Robertson v. Simmons, Ky., 322 S.W.2d 476; (2) a rule which is also derived from K.R.S. 381.220 and which prohibits restraints on alienation lasting longer than twenty-one years and ten months after lives in being when the restraint was created, Perry v. Metcalf, 216 Ky. 755, 288 S.W. 694; Saulsberry v. Saulsberry, 140 Ky. 608, 131 S.W. 491; and (3) a common law rule against restraints which are unreasonable considering all of the circumstances of the particular case, including the purpose and duration of the restraint. Robertson v. Simmons, supra; Courts v. Courts' Guardian, 230 Ky. 141, 18 S.W. 2d 957; Carpenter v. Allen, 198 Ky. 252, 248 S.W. 523; Chappell v. Frick Co., 166 Ky. 311, 179 S.W. 203; Saffold v. Wright, 228 Ky. 594, 15 S.W.2d 456.

The agreement in this case is not invalid under either of the first two rules set forth above because both of those rules are based upon a period of time measured by lives in being plus twenty-one years and ten months. It is concluded that the parties to the agreement in this case contemplated the settlement of Mrs. Heyburn's estate and the exercise of the option within a reasonable period of time and, as a matter of law, certainly within less than twenty-one years after her death. Since Mrs. Heyburn was a life in being when the option was created, no rule based upon lives in being and twenty-one years could possibly be offended by this agreement.

■ Even if this agreement were construed as creating an option exercisable more than twenty-one years after lives in being, it is further concluded that the rule against perpetuities would be inapplicable. Though not articulated in the Kentucky cases, the sole reason for applying the rule against perpetuities to options is because an outstanding option discourages the owner of property from improving it for fear of losing the benefit of the improvements by the exercise of the option, and it is noteworthy that in this country the rule has never been applied even to a perpetual option in favor of a lessee or tenant in possession. 6 American Law of Property, Sections 24.57–24.58 (1952). As officers and directors of the corporation Mrs. Heyburn's sons were in a position analogous to that of a lessee or tenant in possession, and it is clear that the policy behind the application of the rule to options would

not be promoted by striking down this agreement.

Beyond this, the question remains whether this agreement violates a restraint rule which is based upon a period of time other than, or less than, lives in being and twenty-one years, and, as noted above, some cases have recognized the existence of such a common law restraint rule based upon reasonableness of purpose and duration under all the circumstances of the particular case, rather than upon the "lives in being plus twenty-one years" test. Robertson v. Simmons, Ky., 322 S.W.2d 476; Courts v. Courts' Guardian, 230 Ky. 141, 18 S.W.2d 957. See 6 American Law of Property, Section 24.58 (1952).

■ It is concluded that the restraint imposed by this option is not unreasonable in purpose or duration and that it is materially different from any restraint which has heretofore been held by the Kentucky Court to be unreasonable. It is settled that the owner of property may absolutely restrain its alienability, either in his own hands or in the hands of a grantee, for the balance of his (the owner's) life, Hutchinson v. Loomis, Ky., 244 S.W.2d 751; Turner v. Lewis, 189 Ky. 837, 226 S.W. 367; Kentland Coal and Coke Co. v. Keen, 168 Ky. 836, 183 S.W. 247, L.R.A.1916D, 924; Pond Creek Coal Co. v. Runyon, 161 Ky. 64, 170 S.W. 501, and the additional limited period of restraint involved in this case does not make the restraint unreasonable, especially where it was not calculated to delay the timely distribution of the property to new owners free of the restraint at the end of Mrs. Heyburn's lifetime. This approach to the restraint problem is not based upon the artificialities of the orthodox perpetuities doctrine, and it would seem to follow that instruments which are the subject of litigation need not be denied legal effect on the basis of the barest possibility of invalidity. Therefore, some significance can be attached to the fact that Mrs. Heyburn's estate was settled and the restraint ended within a reasonable period of time after the agreement was made.

■ There is absent here the element of restraint on second-generation owners, the heirs of the optionor, except for the limited period of time during which the stock, even without the option, would otherwise be tied up as a practical matter during the course of the administration of the estate. Cf. 6 American Law of Property, Section 24.23 (1952). The two principal cases relied upon by the government, Robertson v. Simmons, supra, and Saffold v. Wright, supra, are distinguishable in this respect, and the point is well illustrated in the Robertson case, which involved an attempt by an optionee to enforce the option against the optionor's heir. It was held that even in the optionee's lifetime a restraint could be of unreasonable duration if, within that time, it was intended to bind an indefinite number of generations on the optionor's/owner's side. But the restraint aspect of an option is a limitation upon the owner's right, and consequently, it is the owner's lifetime which is significant in determining whether the restraint of an option is reasonable in duration. For that reason, it is entirely consistent with Robertson to say that a restraint is reasonable if it is not binding upon succeeding generations of owners, even though an indefinite number of generations of optionees may be entitled to exercise the option. The Saffold case, supra, involved a bequest of bank stock on the condition that it not be sold "as long as said banks do business."

■ The government does not question the effectiveness of a valid option agreement to limit the estate tax value of the property subject to the option, which point has been frequently litigated, Brodrick v. Gore, 224 F.2d 892 (10th Cir.); May v. McGowan, 194 F.2d 396 (2d Cir.); Lomb v. Sugden, 82 F.2d 166 (2d Cir.); Wilson v. Bowers, 57 F.2d 682 (2d Cir.); Estate of Orville B. Littick, 31 T.C. 181; Estate of Lionel Weil, 22 T.C. 1267; Estate of Albert L. Salt, 17 T.C. 92, but it insists that certain "other factors," such as the failure to report these options as assets having a value in the estates of the two sons who

predeceased Mrs. Heyburn, are grounds for denying this option agreement any estate tax effect. Apart from fraud or sham, however, these "factors" have no significance, and since the Government's pleadings raise no issue of fraud or sham, these factors can not be considered. Brodrick v. Gore, 224 F.2d 892 (10th Cir.).

It follows, therefore, that the plaintiffs are entitled to the refund sought and a judgment for the plaintiffs will this day be entered.