## Brock, et al. v. Conkwright, et al.

(Decided March 1, 1918.)

### Appeal from Clark Circuit Court.

1. **Judgment—Proceeding in Rem.**—A judgment, in a proceeding, in rem, is binding upon the parties and privies, with reference to the property involved, but not as to property not involved.

2. **Wills—Construction—Intention of Testator.**—The primary object in construing a will is to ascertain the intentions of the testator, and if the instrument is inartificially drawn, and evidently without knowledge of the force and effect of the terms used, all the provisions, which relate to the same subject, must be considered together.

3. **Trusts—Creation—Effect.**—When a trust is created, the legal estate, in the property, upon which the trust is imposed, is vested in the trustee and the equitable title in the cestui que trust.

4. **Trusts—Debts of the Cestui Que Trustent.**—Where there is no devise over of the trust estate, nor any contingency, upon the happening of which the beneficiary loses the benefits of the trust estate, and no discretion is allowed the trustee, in the giving or withholding the use of the trust estate from the cestui que trustent, the estate may be subjected to the debts of the cestui que trustent.

5. **Trusts—Cestui Que Trustent—Termination of Trust.**—Where the entire equitable estate, in property, upon which a trust is imposed, is vested in the cestui que trustent, and the termination of the trust is provided for by the instrument, which creates the trust; when the trust terminates, the legal title, which has been theretofore held by the trustee, merges with the equitable title, and the holder of the equitable estate becomes the owner of the fee simple legal title to the property.

6. **Trusts—Termination of Active Trust.**—An active trust will not be terminated by a court, nor will the death or failure of the designated trustee to qualify or act relieve the court of the duty of appointing other trustees to execute the trust, as long as the trust is an active one, in accordance with the provisions of the instrument, which created the trust.

7. Trusts—Active Trust.—An active trust, or one which is not inoperative by law, will not be allowed to fail for want of a trustee, but a court of equity will appoint a trustee, or execute the trust by its officers.

8. Wills—Restraint Upon Alienation.—Where a fee simple legal estate is created, in land by an instrument, a subsequent clause, which restrains the sale of the estate during the entire life of the vendee or devisee, is an unreasonable restraint upon alienation and will be rejected.

BENTON & DAVIS for appellants.

PENDLETON & BUSH for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellees, Maude Conkwright and her husband, brought this action, in the Clark circuit court, to enforce the specific performance of a contract, in writing, for the sale of a tract of land, situated in Clark county. The appellees executed and offered to deliver to the appellants, T. W. Brock and W. H. Brock, in accordance with the contract, a deed with clause of general warranty, purporting to convey to the appellants fee simple title to the lands, in controversy. The appellants, by their answer, signified their willingness to accept a good title to the lands, as they were entitled to have under the contract, and to pay the consideration, but denied the ability of the appellees to make to them a good and sufficient title for the land. The history of the title of the lands held by the appellees is as follows:

Sallie E. McKinney, the mother of the appellee, Maude Conkwright, was the owner of the lands in the year, 1859, and on the 15th day of July, of that year, she prepared with her own hand and executed the following holographic will:

"Knowing the certainty of death and uncertainty of life and desiring to secure my children. my property do make this writing to be my last will and testament, to-wit:

"1st. It is my will after my death that all of my property personal and real be equally divided among my children. If one should die then their . proportion of my property should be equally divided among my surviving children.

"2nd. If my mother Lucy W. Ferguson should survive myself it is then my wish that she shall hold all my property as trustee for my children.

"3rd. At her death it is my wish that all of my property be secured to my children so that neither they nor any one else can spend the principal as the proceeds will be sufficient to support them.

"4th. If my uncle Samuel W. Chiles should survive my mother and myself, then it is my will that he take charge of my children and all of their property and be their guardian and protector, and at his death it is my will that he in his judgment shall select some one that will do the same as himself.

"5th. If my boys should show that they have good and steady habits after they have arrived to the age of twenty-five then it is my wish for them to have all of the proceeds of their proportion of my property to act upon but for none of my property, negroes or anything else to be carried by them or any one else out of the state of Kentucky.

"6th. If my daughters should marry then it is my will that enough be taken from the proceeds of their proportion of my property to keep them comfortable.

"7th. It is my will that none of my property above given to my children be taken out of the state of Kentucky. If at any time there should be a refractory servant then it is my will that my mother or uncle, Samuel W. Chiles, dispose of such and the proceeds to go for the benefit of my children. It is my will that Lucy W. Ferguson hold all my property both personal and real in trust for my children and at her death for my uncle Samuel W. Chiles to do the same if he survive her.

"I have written the above with my own hand hereby revoking all other wills heretofore by me made.

."SALLIE E. McKINNEY, (SEAL).

"Acknowledged in the presence of this 15th day of July, 1859. Witnesses, John J. Taylor, Saml. W. Chiles."

In June, 1863, she added the following codicil to her will and which is numbered as section 8, of the will:

"8th. It is my will and wish that neither my mother Lucy W. Ferguson or my uncle Samuel W. Chiles be compelled to give security as guardian, trustee, or executor as I have an abiding confidence that they will dispense equal justice to all my children.

"I have written this with my own hand. This June, 1863.

"SALLIE E. McKINNEY."

In the year, 1864, Sallie E. McKinney died, and the foregoing will and its codicil was admitted to probate, in the Fayette county court, on the 5th day of October, 1864. The testatrix, left surviving her, two sons, W. W. McKinney and John F. McKinney, and three daughters, Mrs. Tevis, Mrs. Graves and the appellee, Maude Conkwright. Thereafter, in the year, 1868, by a proceeding in the county court, the lands owned by the textatrix at her death were divided between the five children of the testatrix, and a portion of the lands in controversy was devised to the appellee, Maude Conkwright, under the will of her mother. Thereafter, other lands were conveyed to the appellee by a commissioner of the Fayette county court, and the deed of conveyance to her contains the following:

"The portions of land hereby conveyed to John, Maude and William McKinney and Jennie Graves and Lucy W. Tevis are to be taken and held subject to the conditions and limitations contained in the will of Sallie E. McKinney, their mother, which is now of record in the Fayette county court, and subject to the right of Lucy W. Ferguson, as to the use for her life of one-fourth of each of their shares."

The lands embraced in the deed above mentioned constitute a portion of that, which is now in controversy, and hence, to determine, whether the appellees can convey a good title to these lands to the appellants, it becomes necessary to construe the will of Sallie E. McKinney, and to determine what estate the appellee, Maude Conkwright, has in the lands, under the will of her mother.

On the 14th day of May, 1879, John McKinney died, intestate, leaving neither wife nor children surviving him, and leaving, as his only heirs, at law, his brother and sisters, Lucy Tevis, Jennie Graves, W. W. McKinney and Maude Conkwright. John McKinney was largely involved in debt, at the time of his death, and his administrator filed an action in the Clark common pleas court, in which W. W. McKinney, Jennie Graves, Lucy Tevis and Maude Conkwright were made defendants, and in which a construction of the will of Sallie E. McKinney was sought, the plaintiff alleging that under that will the intestate, John F. McKinney, took a fee simple estate in the one-fifth portion of the real estate of Sallie E. McKinney, his mother. All of the devisees under the will of Sallie E. McKinney, who are named above, except the

deceased, John F. McKinney, filed answers in the suit, in which they did not deny the construction placed upon the will by the administrator of John McKinney, and all joined in requesting the court to construe the will and to determine what estate each of them took under such will. The common pleas court of Clark county rendered a judgment in the above case of John McKinney's administrator against his heirs and creditors, which recited that W. W. McKinney, Maude McKinney, now Conkwright, Jennie Graves, and her husband, and Lucy Tevis and her husband, having filed separate answers and consenting and agreeing to the construction of the will asked by the plaintiff, it was adjudged, that under the will of Sallie E. McKinney, each, of her children, surviving her, took a, fee simple estate in one undivided fifth of the land owned by her at her death, and adjudged, that the portion of the lands, which had been set apart to the intestate, in severalty, which had passed under the will of Sallie E. McKinney to the intestate, John McKinney, should be sold in satisfaction of the debts owing by the intestate. There was never any appeal from this judgment nor was it ever set aside for any reason. It seems to have been rendered in the year, 1879.

The court, by the judgment appealed from adjudged, that the appellee, Maude Conkwright, was the owner of the lands with a fee simple title, and that she and her husband had power to convey a good title to the lands, and ordered that the written contract be specifically performed by the appellants, by the acceptance of the deed and the payment of the purchase price, and from this judgment the appeal is prosecuted.

(1) It is now urged, that by the judgment in the Clark circuit court, above referred to, the court construed the will under consideration as devising the fee simple title to the lands to appellee, and that in as much as that judgment was never set aside and is now in full force and effect, that it is binding upon all other persons with reference to the land. It will be observed, however, that the lands, which are in controversy in this suit, were not in controversy, in the suit in the Clark circuit court, nor was the title of the appellee to them or her ability to sell and convey them under consideration or determined. The only question, which was before the court for decision in that suit was, whether the lands, which John F. McKinney received under the will, could be subjected to the payment of the demands of his creditors. He was

the sole beneficiary of those lands, and there was no devise over in the event of his death or in the event of an attempt to subject them to his debts. At his death, such an estate as he had in them, whether legal or equitable, passed to his heirs by the laws of descent, and if it was a trust estate, there was no discretionary power given by the will to the trustee to withhold the beneficial use of it from the *cestui que* trust, and hence it could be properly subjected to the payment of his debts. Section 2355, Kentucky Statutes; Davidson v. Kemper, 79 Ky. 5; Parson v. Spencer, 83 Ky. 305; Bull v. Kentucky National Bank, 90 Ky. 452; Wolley v. Preston, 82 Ky. 415; Knefler v. Shreve, 78 Ky. 297; Bland v. Bland, 90 Ky. 400. The provisions of the will applying to the lands devised to the sons were different from the ones applying to the daughters. The suit in the Clark circuit court was in the nature of a proceeding, *in rem,* to subject the lands of John F. McKinney to the payment of his debts. The lands, in controversy, were not mentioned in that suit, and hence the court was without jurisdiction of the lands in controversy here. Its decree was conclusive between the parties to the action and their privies, with reference to the property involved, but not with reference to property not involved. Neither the parties to the action nor the property involved in that action are the same as in the present action. Hence, the judgment was not an adjudication of the issue in this action, and the power of appellee to sell and convey the lands in controversy is not a matter, *res judicata,* by reason of that judgment. Malone, etc. v. Sching, etc., 101 Ky. 56.

(2) Hence, it becomes necessary to make a construction of the will of Sallie E. McKinney, as applying to the lands in controversy, and to determine from it whether the appellees have a fee simple title to the land and have power to sell and convey the title to it. It is insisted for appellants, that under the provisions of the will, that the appellee, Maude Conkwright, has only a life estate in the lands, the title to which is held in trust for her, and that she is only entitled to such portion of the income from the lands, as will enable her to live comfortably, and that the trust created in the will is still an active trust; while it is insisted for her, that the will invested her with the fee to the lands, and, although it restrains her from a sale of them during her lifetime, that such restraint is unreasonable and void, and for such reason she has the power to sell and convey them. Neither of

these constructions of the will, however, appear to us as being correct, without certain modifications. The will was written by the testatrix, evidently without the advice of any one, who could justly claim to possess any proficiency in the preparation of testamentary documents, and probably without advice or suggestion of any kind. It is very inartificially drawn and apparently without any correct knowledge of the meaning, force and effect of any of the terms used, when applied to dispositions of property, and without the necessary knowledge of the meaning of the terms to be able to differentiate between them. The clauses of the will do not relate to each other with any logical sequence, and hence technical rules of construction give very little assistance in determining and effectuating the intentions of the testatrix. In construing such a will, as well as any other, the primary and essential object, to be kept in view, is to ascertain the intention of the testator, and all general rules of construction have for their object the ascertainment of such intention. Hunt v. Johnson, 10 B. M. 344; Thickston v. Watson, 84 Ky. 210; Anderson v. Hall, 80 Ky. 91; Patrick v. Patrick, 135 Ky. 307; Loy v. McClister, 141 Ky. 800; Watkins v. Bennett, 170 Ky. 464. Each clause of the will will have to be read in connection with every other clause and especially every one relating to the same subject, whether in one part of the will or the other, and the intention of the testatrix gathered from a consideration of the whole of it. In Watkins v. Bennett, *supra*, it is said:

"In arriving at the intention of the testator, the entire will and all of its provisions will be looked to, and if there are ambiguous terms or ambiguous clauses in a will, to ascertain the proper interpretations of them, the motives which can reasonably be supposed to have actuated the testator, the purpose of making a will, the relations existing between the testator and the devisee, the nature of his property, and the amount of it, may be looked to in aid of the language, in ascertaining the intention of the testator." The record does not disclose the ages of the devisees, at the time the will was written, but, it is apparent, that they were young and of immature judgment and to protect them against the results of such immature judgment seems to have been the chief purpose, in the making of the will. The testatrix, however, does not exhibit, by the provisions of the will, any purpose not to devise the entire equitable estate, in her prop-

erty, to the devisees. Upon the other hand, in the pre-
amble, she declares the purpose of her will is to "secure"
it to them and the same declaration is reiterated, in the
third clause. In the first clause she, unqualifiedly, devised
the entire estate, in the property, to the devisees, without
any qualifications or limitations. Although in the second
and seventh clauses, and probably in the fourth, she pro-
vides for the property being held in trust, during the life-
time of her mother and her uncle, Samuel W. Chiles, the
entire income of the property during the time it was to be
held in trust was for the use and benefit of the devisees.
There is no devise, over of the property, after the lives
of the devisees, to their children or to anyone else and
there is no contingency provided for, upon the happening
of which, anyone other than her children should ever be
the owner or have any interest in the property or its use.
The trustees were not vested with any discretion to with-
hold the use of the property from the devisees. Hence
the full equitable estate, in the property from the begin-
ning, was intended to be vested in the children of testa-
trix. The only provision of the will, which could be urged,
as militating against the conclusion, that, it was the inten-
tion of the testatrix to give to her children the absolute
beneficial use of the estate in the property are the provi-
sions of clauses three, five and six. It is very difficult to
determine what these clauses mean, in the light of the
other provisions of the will. After the first clause, which
directs the property to be divided between her children at
the time of testatrix's death, and after the provision of
the second clause, which provides, that the property shall
be held by Lucy W. Ferguson, as a trustee, then by the
third clause, it is provided, that after the death of Lucy
W. Ferguson, the property is to be "secured" to the
children, so that neither they nor anyone else could ever
sell or dispose of the principal, as the "proceeds"
will be sufficient to support them. How it is to be "se-
cured," there is no suggestion, neither can it be deter-
mined with what exact meaning the testatrix made use of
the word "secured" in that connection. Whether she
intended, by that clause of her will, when considered in
the light of the other provisions, merely, to prevent the
spending of any of the principal of the estate, but not to
forbid the sale of the property, in kind, and its conversion
into money, or, whether the prohibition was intended
to extend to the sale of the land and the other property,

in kind, can not be satisfactorily determined. Standing, alone, it does not restrain the sale of the property, but, seems only to prohibit the spending of any of the sums of money for which the property might be sold. As such it would seem to apply to the property while held in trust, but not longer. In the fifth and seventh clauses are provisions, which prohibit the removal of any of her property out of the State of Kentucky, which would imply, that, it was not to be sold, and in the seventh clause the persons designated as trustees are authorized to sell the slaves, in the event, they should become refractory, which would imply that they were not to be sold in any other event. The word ''proceeds'' as used in the third clause, was used in the sense of income. In the sixth clause the same word seems to have been used in the sense of the selling price of the property, or the property, in kind, itself, as well as the income. In the fifth clause the word ''proceeds'' seems to have been used in the sense of the respective sons' portions of the estate devised, in kind, as well as otherwise, as it was used in connection with the provision, which provided that the sons should not take any of the property including slaves, devised to them, out of the state. It is true, that the testatrix does not in the first clause, in devising her property to her children, nor in any clause, make use of any words of inheritance, such as, as to the devisees, forever, or to them and their heirs, and while, anciently, the absence of such language would have made necessary a construction, that it was only a life estate intended to be devised, but, this rule, of construction, was changed long, ago, by the statute, which is now section 2342, Ky. Statutes, which provides in substance, that unless a different purpose appears by express words or necessary inference, that an estate, in land, created by a deed or will, although without words of inheritance, should be deemed a fee simple or such other estate as the grantor or testator had power to dispose of. Howard v. Howard, 4 Bush 494; Beinlien v. Jones, 102 Ky. 570.

While the testatrix intended to vest her children with the entire beneficial estate in the property, when all the clauses of the will are read together, it is clear that, she, at least, during the respective lives of her mother and uncle, devised to her children only an equitable estate in the property, but, carrying with it the entire beneficial interest, as the legal title was devised to her mother, as a trustee, and at her death, was to pass to

her uncle, as a trustee, if he survived her mother. Where a trust exists the legal title is in the trustee. Gray v. Lennox, 215 Mass. 598; Welch v. City, &c., 221 Mass. 155. The second clause of the will named the testatrix's mother, Lucy W. Ferguson, as trustee for the children, and in the seventh clause it is provided in the following language: "It is my will that Lucy W. Ferguson hold all my property both personal and real in trust for my children, and at her death for my uncle Samuel W. Chiles to do the same if he survive her." In the eighth clause, or codicil, the testatrix provides that, neither, her mother nor her uncle, shall be required to give sureties, as trustee, as she had an abiding confidence, that, they would be just to all her children. The trust created was an active one, as expressed in clauses three, five and six, and not a naked, dry trust, as where the trustee is only the holder of the legal title and has no other duty to perform so long as the trust was by the terms of the will to continue. Blackburn v. Blackburn, 167 Ky. 113; Quigley's Trustee v. Quigley, 161 Ky. 85. There is, however, no provision for the continuance of the trust after the death of the designated appointees, unless, it is contained in the fourth clause of the will. That clause provides, that, if the testatrix's uncle, Samuel W. Chiles, should survive her mother, he should "take charge of my children and all of their property and be their guardian and protector," and at his death, in his discretion, he should select someone to do the same as he was to, while living. It is exceedingly questionable, what it was the testatrix intended by this clause. It precedes the fifth clause, which provides for the termination of the trust, as to the sons, when they should become twenty-five years of age and of steady habits, and, the sixth clause, which provided for the furnishing of a sufficiency of the daughters' portions of the estate, devised to them, "to keep them comfortable" in the event of their marriages, and preceded, though not connected with, the seventh clause, which designated the uncle, as a trustee, after the death of the mother. The term "guardian" is used in conjunction with the term "protector." If the term "guardian" was used, in its ordinary legal sense, meaning a statutory or testamentary guardian, his duties would expire with the devisees' arrival at their respective majorities, and the clause could only have application to the time of their respective minorities. The confiding of the custody of the persons of the devisees to the "guardian and protector," would seem

to indicate, that the term was used, in its sense, as a statutory or testamentary guardian, in the ordinary acceptation of the term, but, in the codicil, it is provided that neither the mother, Lucy W. Ferguson, nor Samuel W. Chiles, should be required to give securities as trustee, guardian or executor. Lucy W. Ferguson was not appointed by the will either as guardian or executor nor was Samuel W. Chiles nominated as an executor. This would indicate that the testatrix did not differentiate between the meaning of the terms, guardian and trustee, and used them indiscriminately, as meaning the same office, and that in the fourth clause, in the use of the term "guardian" she intended a trustee, as in the second and seventh clauses. In such case, the trust, imposed upon the property, terminated with the death of Samuel W. Chiles, as. he did not nominate another to succeed him.

Of course, it is a well settled rule of equitable jurisprudence, that a trust will not fail for want of a trustee, as a court of equity has inherent jurisdiction to appoint a trustee and execute the trust, if it is an active trust or is not by law inoperative. 39 Cyc. 277, 312; Warring v. Warring, 10 B. M. 331; Cotton v. Brown, 3 R. 679; Tucker v. Grundy, 83 Ky. 540; Harris, &c. v. Rucker, 13 B. Monroe 564; In Re Craig, 1 Barb. (N. Y.) 33. The death or failure of designated trustees to qualify would not terminate an active trust nor relieve the court of its duty to execute the trust, if it was not inoperative by law. Looking, however, to all the provisions of the will and considering the purposes, which the testatrix must have had in view, in creating the trust, and extracting her intentions from the confusion of ideas and terms, by which she sought to express her intentions, it is concluded, that she did not intend, that the trust, upon the property devised, should continue any longer than during the lifetime of her mother and uncle, respectively, or, at least, it should terminate when the uncle died, having exercised his discretion not to continue it, by failing to nominate a successor. This conclusion is fortified, by not only the fact, that the entire estate was given to the devisees without any devise over or limitations upon the enjoyment of its use and no provision is made for the continuance of the trust, though such express provision was not necessary for its continuance, if it appeared from a fair construction of the will, that, it was intended to be continued, but, also, from the further fact, that a provision was made for the termination of the trust, as to the sons'

portions of the estate, before the death of either of the designated trustees and no one was authorized to sell a slave except the mother or uncle and then, not as trustees, but, as a personal confidence. The powers of discretion given to the designated trustees, while connected directly with the management of the trust and to promote its object and although such a trust does not terminate with the life of the trustee, unless it is so provided by the trustor, it appears, that the personal confidence of the testatrix in her mother and uncle, doubtless, was the cause, in large part, of the existence of trust. Kennard v. Kennard, 56 Atlantic 93; Safe Deposit & Trust Company v. Sutro, 75 Maryland 365. The pleadings show, that both Lucy W. Ferguson and Samuel W. Chiles have long since died and that neither of them ever qualified or acted as trustee under the will, nor has any other person so done, although the will was probated nearly a half century ago. When the trust terminated in accordance with the intentions of the testatrix, the legal title to the lands in controversy, necessarily merged with the equitable title and appellee became the owner of a fee simple title to the land.

If the third and sixth clauses of the will are considered as relating only to the time of the duration of the trust estate and such seems to be their intendment, their provisions ceased to have any force with the termination of the trust, but, if the provisions of the third clause; or other provisions of the will, should be considered, as continuing in force, as a prohibition upon the power of the owner to sell or dispose of the estate, the following state of case is presented. The appellee being the owner of a fee simple legal estate, is prohibited from making a sale of it during her entire life. Literally, the clause, if construed as an inhibition upon the sale of the land, prohibits its sale, not only during the lifetime of the present owner, but during all future times. One of the essential elements of a fee simple estate is an unlimited power of alienation. The general rule, which prevails is, that, where the fee simple title to an estate under a deed or will passes to the grantee, any restraint, attempted to be imposed by the grantor upon the grantee to prevent alienation of the property, is void, and the restraining clause will be rejected, but, in this jurisdiction a reasonable restraint may be imposed and such a provision will be upheld. Where a fee simple legal estate is created and the attempted restraint is in the nature of a condition

subsequent to the granting clause, and is to be for the entire life of the vendee or devisee, the restraining clause is void. Chappell v. Frick, 166 Ky. 311; Wallace v. Smith, 24 R. 139; Best v. Commonwealth, 10 Bush 36; Page v. Frazier, 14 Bush 205; Earnest v. Shinkle, 95 Ky. 608; Roberts v. Porter, 100 Ky. 130; Johnson v. Dumeyer, 23 R. 2243; Kean v. Kean, 13 R. 956; Rice v. Hall, 19 R. 814; Stewart v. Barrow, 7 Bush 368; Stewart v. Brady, 3 Bush 623; Harkins v. Lisle, 132 Ky. 767; Lawson v. Lightfoot, 29 R. 217; Kentland Coal & Coke Co. v. Keen, et al., 168 Ky. 836. After the termination of the trust, in the instant case, and the legal title having vested in the *cestui que trustent,* the estate is not in the same condition, as where an estate is granted or devised to one and placed in trust for a specified time, which has not expired, or where the trust is for the life of the beneficiary, with power in the trustee to sell and convey and the rule applicable, in such a state of case, is not applicable to the state of facts, presented here.

The judgment is therefore affirmed.