Reversing.
The late J.H. Gray executed a long and meticulous will on May 5, 1904. For the most part he devised his estate to his wife for life. He never had any children. One of his brothers was Charles Gray, who had seven children whose ages at the time the will was written ranged from seven to seventeen years. The sixth clause of the will is as follows:
"On the termination of my wife's tenancy by death or remarriage I will my said real estate to my brother Charles' children now living to-wit: Robert Henry, Emily, Charles Monroe, known as Roe, James Phillip, Mary Fanny, and Mazie during their lives, they to be joint tenants of said land and they are to occupy and use the same together. Any one of them may sell or lease his interest in said land to any of his co-tenants, but no one shall lease or sell any interest to any other person than *Page 267 
one of said children or their decendants as hereinafter provided.
"If any one of my said nieces or nephews die either before or after my death, and leave no living descendants his interest shall vest in those living under the same conditions as above. Should any one of said children die leaving descendants the said descendants shall take the place of its parents, but no fee shall vest in any descendant until after all of my nieces and nephews above named shall die, when that event happens the title to said real estate shall vest in the descendants of my said nieces and nephews according to their legal rights."
During the thirty years intervening between the execution of the will and the death of the testator, in 1934, Gray executed four codicils, his brother having died and other changes occurring during the period. But the sixth clause was not modified in any way. The widow died December 30, 1943, without having remarried. In construing this part of the will, the circuit court adjudged: The seven nephews and nieces each take a life estate. Upon death, his or her share then passes to his or her descendants, if any; if none, then to the surviving nephews and nieces. The descendants, if any, take the property with the same limitations as to sale or lease imposed upon the share of his ancestor. Any nephew or niece or successor descendant may sell or lease his or her share to any other nephew or niece or successor descendant and not to anyone else; but the conveyance or lease shall have no effect beyond the death of the last surviving nephew or niece. Upon the death of the last survivor, the title to the land shall vest in fee in the descendants of the nephews and nieces per stirpes. Should any of them die leaving descendants and they should die without surviving issue before the death of the last nephew or niece, then and in that event the share in fee that would have otherwise passed to such descendant shall lapse.
All of the nephews and nieces and their adult children seek a reversal of the judgment, and to have the will construed so that the limitations upon the use and title of a farm of 140 acres shall be declared invalid, or, alternatively, so construed that a conveyance by a nephew or niece to another of the class would give the *Page 268 
grantee a fee simple title. Only the guardian ad litem for the infants appears in opposition.
We are not authorized to say that the testator intended the limitation over to be merely that if any one of his nephews or nieces dies without having sold his or her share or right in the property, it passes to his or her issue in fee. We are not authorized to delete the limitations which testator placed upon the bequests or to nullify his clear statements that, "no fee shall vest in any descendant until after all of my nieces and nephews above named shall die" and "when that event happens the title to said real estate shall vest in the descendants of my said nieces and nephews according to their legal rights."
There is no doubt that the word "descendants" as used in this will is to be regarded as children, grandchildren, and so on. Holloway v. Brown, 181 Ky. 716, 205 S.W. 925.
The will clearly devises a life estate to the seven nieces and nephews jointly, with succession in the others as they shall severally die, and devises the remainder over to their respective descendants, who take subject to the same conditions as to occupancy and use and the same restrictions on alienation, and also the limitation that "no fee shall vest " in any of them until after all the life tenants shall have died. We construe this latter clause as meaning that the absolute or fee-simple title shall vest in only such descendants as may have survived the last life tenant. To state it conversely: Each descendant was given a remainder in fee subject to be defeated by his antecedent death, i. e., a defeasible fee in remainder. A defeasible fee is defined as one in which a person becomes invested with the fee-simple title subject to be divested upon the happening of some contingency provided in the will, as by death before the time fixed for the taking effect of the devise. Wills v. Wills, 85 Ky. 486,3 S.W. 900; Forsythe v. Lansing's Ex'rs, 109 Ky. 518, 59 S.W. 854; Dodd v. Scott, 145 Ky. 310, 140 S.W. 528; Slote v. Reiss,153 Ky. 30, 154 S.W. 405; Murphy v. Murphy, 182 Ky. 731,207 S.W. 491; Lindenberger v. Cornell, 190 Ky. 844, 229 S.W. 54; Gatto v. Gatto, 198 Ky. 569, 250 S.W. 833; Giltner's Trustee v. Talbott, 253 Ky. 474, 69 S.W.2d 981. Of particular pertinence and application are Cooper's Adm'r v. Clarke, 192 Ky. 404,240 S.W. 361, and Sipes v. Boehmer, 291 Ky. 824, 165 S.W.2d 807. *Page 269 
The result is that the seven nieces and nephews have only a life estate, subject to the restraints, and their respective descendants a succeeding life estate plus a defeasible fee in remainder. There cannot be a merger of a life estate and a defeasible fee in remainder. 31 C.J.S., Estates, Sec. 126; Abernathy v. McCoy, 91 Ind. App. 574, 154 N.E. 682. Compare Larmon v. Larmon, 173 Ky. 477, 191 S.W. 110. This conclusion is different from the construction of the will by the chancellor, as we have above outlined.
Thus there is presented the questions of the validity of the restraints on alienation, (a) as to time and (b) as to grantees, attached to (1) a life estate and to (2) a defeasible fee.
In short, the provision of the will restrains the alienation of title to the land until the death of the last of the nieces and nephews, except any of them or their issue in succession may dispose of their interests to any of the others, but such disposition or transfer of title does not extend beyond the death of the grantors. This restricts the power of the several beneficiaries to lease or sell their interest in the land only to one another. So long as the seven are living, the class of purchasers is confined to six persons. As they shall severally die, the class is gradually expanded to include their descendants.
It appears that the youngest of the seven nephews and nieces is now forty-seven years of age. Thus, as measured by the Mortality Tables, the fee simple title to the land may remain tied up about twenty-three years longer, or for a total period of thirty-five years following the death of the testator.
The question is whether it was within the law for the dead hand of the testator to reach beyond the grave and control his property, its use and final disposition, in the way he stipulated in his will.
The prescribed period is within the permission of the statute against perpetuities because the condition of vesting the fee is suspended only during the life of the longest liver of the seven. Sometimes there is confusion or a failure to regard as distinct laws the rule against perpetuities, which is principally covered by statute, Kentucky Revised Statutes381.220, and the rule against unreasonable restraints on the power of alienation, *Page 270 
which is common law. 41 Am. Jur. Perpetuities and Restraints on Alienation, Secs. 2, 3, 66; Cammack v. Allen, 199 Ky. 268,250 S.W. 963. The statute applies only to the suspension of the ultimate vesting of an estate and not to any restraint upon the right or power of alienation of an estate already vested, or which is or but for the restraint would be indefeasible. Cammack v. Allen, supra. As has been often written, our rule in Kentucky with respect to restraints against alienation annexed to an otherwise fee simple title, or even a defeasible fee, is different from the general rule, both in England and America, in that we recognize as valid a partial restraint, or one for a reasonable period of time, but not beyond the life of the grantee or devisee. Stewart v. Brady, 66 Ky. 623, 3 Bush 623; Stewart v. Barrow, 70 Ky. 368, 7 Bush 368; Kean's Guardian v. Kean, Ky, 18 S.W. 1032; Wallace v. Smith, 113 Ky. 263,68 S.W. 131; Smith v. Isaacs, Ky., 78 S.W. 434; Lawson v. Lightfoot, 84 S.W. 739, 27 Ky. Law Rep. 217; Girdler v. Girdler, Ky. 113 S.W. 835; Harkness v. Lisle, 132 Ky. 767,117 S.W. 264; Chappell v. Chappell, Ky., 119 S.W. 218; Cain v. Gray, 146 Ky. 402, 142 S.W. 715; Chappell v. Frick Company,166 Ky. 311, 179 S.W. 203; Kentland Coal Coke Co. v. Keen,168 Ky. 836, 183 S.W. 246, L.R.A. 1916D, 924; Gillespie v. Winston's Trustee, 170 Ky. 667, 186 S.W. 517; Sparrow v. Sparrow, 171 Ky. 101, 186 S.W. 904; Francis v. Big Sandy Company, 171 Ky. 209, 188 S.W. 345; Cropper v. Bowles, 150 Ky. 393, 150 S.W. 380; Brock v. Conkwright, 179 Ky. 555,200 S.W. 962; Speckman v. Meyer, 187 Ky. 687, 220 S.W. 529; Turner v. Lewis, 189 Ky. 837, 226 S.W. 367; Ramey v. Ramey, 195 Ky. 673,243 S.W. 935; Carpenter v. Allen, 198 Ky. 252, 248 S.W. 523; Cahill v. Pelzer, 204 Ky. 644, 265 S.W. 32; Saffold v. Wright,228 Ky. 594, 15 S.W.2d 456; Lindsay v. Williams, 279 Ky. 749,132 S.W.2d 65; Saulsberry v. Saulsberry, 290 Ky. 132,160 S.W.2d 654, 655. To these cases may be added Frazier v. Combs,140 Ky. 77, 130 S.W. 812, and Pond Creek Coal Co. v. Runyon,161 Ky. 64, 170 S.W. 501, which were overruled in Kentland Coal Coke Co. v. Keen, supra, only to the extent that they held a deed made in violation of the condition of restraint to be void and not merely voidable at the instance of the grantor or his successors or a testator's successors of interest and helpfulness are the portions which treat of Restraints *Page 271 
on Alienation of an excellent monograph by Professor W. Lewis Roberts, of the College of Law of the University of Kentucky, on "Future Property Interests in Kentucky" appearing in 13 Kentucky Law Journal, 187; 15 Ky. Law J. 367, and 16 Ky. L. J. 105. The unfortunate confusion in our own cases is revealed and ably considered by Professor Roberts.
With respect to restraints or limitations as to persons to whom disposition or alienation of the estate might be made, partial restrictions within certain limitations are recognized as valid by the weight of modern authority. If the condition unreasonably limits the number or class of persons to whom the property may be aliened, it is invalid. 41 Am. Jur., Perpetuities and Restraints on Alienation, Secs. 75, 77; Restatement of the Law of Property, Section 406, paragraphs i, j, k. We have held void as unreasonable restraints of this character in several cases. Chappell v. Chappell, Ky.,119 S.W. 218; Chappell v. Frick Co., 166 Ky. 311, 179 S.W. 203, 204; Carpenter v. Allen, 198 Ky. 252, 248 S.W. 523; Cooper v. Knuckles, 212 Ky. 608, 279 S.W. 1084, 1085; Courts v. Courts' Guardian, 230 Ky. 141, 18 S.W.2d 957.
We have always held that in respect of time, a restraint on the power of alienating a life estate is valid. Call v. Shewmaker, Ky., 69 S.W. 749; Morton's Guardian v. Mortoh,120 Ky. 251, 85 S.W. 1188; Thurmond v. Thurmond, 190 Ky. 582,228 S.W. 29; Anderson v. Simpson, 214 Ky. 375, 283 S.W. 941.
With respect to restraint of alienation of a life estate to a limited class of persons, it is said in 41 Am. Jur., Perpetuities and Restraints on Alienation, Section 81:
"The weight of authority is to the effect that the doctrine as to restraints on alienation applies as well to estates for life as to estates in fee simple, and that when property is actually granted or devised for life, the grantor or testator cannot take away the incidents of a life estate, nor annex restrictions which will take away all power of alienation."
As shown above, we do not follow this rule of invalidity in so far as it relates to duration of restraint of a life estate. In respect of limitations of the number of permitted alienees, irrespective of our rule of validity *Page 272 
as to time, we think it is illogical to say that it is lawful for a man to give or convey to another an estate only for his lifetime, but not lawful for him to attach a condition that if he disposes of that life interest he must do so to others named by the testator or grantor. Close to this is the universally accepted doctrine that the donor of a special power of appointment may restrict the donee to passing on the property to certain specified individuals or class of individuals.
The Restatement of the Law of Property, Section 409, says: "A promissory restraint or forfeiture restraint on the alienation of a legal possessory estate for life is valid." The rationale is, in brief, that in actual practice the restraint does not interfere with marketability to the owner of the remainder or balance of interest in the land who might enforce the restraint, and the separated interest or title is not readily marketable, so the restraint becomes relatively unimportant and the slight lessening of the power of alienation is not serious. Moreover, it is added:
"Normally the objective sought to be accomplished by the imposition of a restraint on the alienation of an estate for life is the protection of the life tenant against his own indiscretions. This worthy objective is one which ought to be effectuated where to do so does not encounter any substantial social objection."
We have, in effect, held that there may be a restraint upon the class of alienees of a life estate. In Holt's Ex'r v. Deshon, 126 Ky. 310, 103 S.W. 281, the testator devised life estates in a farm to two named cousins. He provided:
"Said devisees shall reside on said farm, said farm is never to be sold, leased or rented, no blue grass field is to be plowed, no stock to be pastured on said real estate except such as is owned by said devisees, and no tobacco is to be raised on said real estate."
Concerning the contention that the restrictions were invalid, the Court said:
"A limitation upon Mrs. Deshon and Mrs. Clark as to how they should use the land is not in violation of the statute against perpetuities. The property belonged to the testator, and, when he devised to them a limited *Page 273 
estate in it, he had power to fix such limitations upon the estate granted as he saw fit. Their estate is not absolute, and the question as to what limitations may be imposed upon the devise of a fee simple is not, therefore, presented. If either of them dies leaving issue, the issue can sell the land at pleasure and use it as they please. But the testator, when he did not give Mrs. Clark and Mrs. Deshon the absolute fee, might put such limitations upon them as he deemed proper for the preservation of the estate for those who are to come after them."
Therefore, we are constrained to hold that it was within the legal power of the testator to place the restraint upon the several life estates. However, it may be observed, that if any life tenant should convey his interest in violation of the restraints, his conveyance would be only voidable since there is no provision for cesser or forfeiture, and he would likely be estopped to question the conveyance. Likewise any other life tenant joining in the deed. Kentland Coal Coke Co. v. Keen,168 Ky. 836, 183 S.W. 247, L.R.A. 1916D, 924; Cooper v. Knuckles, 212 Ky. 608, 279 S.W. 1084.
We are of opinion that the restraints on the power of alienation of the defeasible fee in remainder are unreasonable both in respect of time and of grantees, and that they are ineffectual and invalid under the law.
The provision that the devisees "are to occupy and use the same (farm) together" must be given a practical interpretation. It appears that the seven nephews and nieces, who are now in or past middle age, have their respective families and it is impractical for all of them to occupy or use the land together physically. The requirement must be regarded as constructive and not actual occupancy.
The judgment is reversed for the entry of another consistent with this opinion.
Whole Court sitting. *Page 274