**Fannie Mayo ATKINSON et al., Appellants,**

**v.**

**Imogene KISH et al., Appellees.**

Court of Appeals of Kentucky.

June 23, 1967.

J. K. Wells, Paintsville, for appellants.

W. B. Hazelrigg, Paintsville, Eldred E. Adams, Louisa, for appellees.

PALMORE, Judge.

Thomas J. Mayo died in 1917 leaving a will restraining the alienability of title to his 500-acre farm adjacent to Paintsville, Kentucky, until 21 years and 10 months after the death of the last survivor of four life tenants, one of whom is still living. The surviving life tenant, Fannie Mayo Atkinson, and her five children appeal from a judgment which has the effect of confirming an agreement made in 1927 by which she and her brother, Robert H. Mayo, another of the life tenants, who is now deceased, undertook to divide the farm in two equal parts which today, according to Mrs. Atkinson and her children, are not equal. Appellees are the three children (and their respective spouses) of Robert H. Mayo.

So far as we are now concerned, the farm in question was devised to the testator's widow, Mary E. Mayo, for life with remainder to four of his children, Robert, Fannie, Washington and Milton, for life with remainder over to their issue, if any, in the manner hereinafter described. In 1927 Mary E. Mayo (testator's widow) had died and Washington and Milton had died without issue. Robert and Fannie, together with their then and future issue or heirs, were the owners of all the title to the property, and Fannie was sole executrix of the will.

The agreement recited that Robert and Fannie were sole owners of the farm and had agreed upon a division along a line therein described; that Fannie had elected to take the upper and Robert the lower portion; that the line was to be run by a surveyor as soon as possible; "and that immediately after said line is run and the division is made each of the parties hereto agree and bind themselves to make to the other a good and sufficient deed conveying to each other the portion allotted to him * * *" etc. It was signed by Robert and Fannie individually and by their respective spouses but was not acknowledged and not recorded. The provisions for a survey and an exchange of formal conveyances were never carried out. Nevertheless, a fence was erected along the agreed line, each of the parties proceeded to occupy and exercise exclusive dominion over his respective portion of the farm in accordance with the agreement, and it has remained so ever since. Robert constructed a residence and made other improvements on his portion and they have been maintained by his widow and children ever since his death in 1935. Likewise, Fannie has improved and maintained the portion occupied by her.

This suit was brought in 1957 by Robert's children against Fannie and her children. The plaintiffs asked that they be declared the owners of the lower portion of the farm as divided in 1927 and, in the event such relief could not be granted, that the entire property be divided pursuant to KRS 381.-136, having regard to the improvements made by the parties. The answer asserted, inter alia, that the 1927 contract was intended only as a lifetime arrangement between the parties; that it was in fact abandoned and never consummated; that the separate occupancy of the land thereafter was merely a temporary expedient (and thus, presumably, terminable at will); that the agreement was not binding on the contingent remaindermen; that the purported division was and is unequal and unfair;

and that by reason of certain actions pertaining to a condemnation suit the plaintiffs are estopped to rely on the division.

Both parties took depositions after which, on September 25, 1959, by agreement of counsel the case was submitted for judgment. On March 31, 1961, the trial court filed a memorandum opinion to the effect that in 1927 Robert and Fannie were owners of the fee, that the restraint on alienation imposed by the Thomas J. Mayo will was unreasonable and void, that KRS 381.-136 is inapplicable because the parties are not life tenants, and that the 1927 division was valid.

The next document in the record is a "Supplemental Opinion and Finding of Fact" filed on December 4, 1964, in which the facts are again recited and it is again stated that the boundary line is binding upon all the parties.

Judgment was entered on February 19, 1965. It reiterates that the attempted restraint on alienation was void and that the division made by Robert and Fannie "is valid and binding upon all parties to this action." It further adjudges that the two portions as so divided "are of approximately the same market value," "reaffirms" the voluntary partition pursuant to the court's authority under KRS 381.136, and declares the Robert Mayo children owners of the lower portion and Fannie and her children owners of the upper portion.

Before proceeding to an analysis of the legal problems now presented it is necessary to set forth in detail the relevant terms of the Thomas J. Mayo will.

Clause IV, as modified by codicil, provided as follows:

"Upon the death of my said wife and subject to the conditions and restrictions herein imposed, I devise and give the real estate mentioned in clause II of this will in remainder unto my sons, * * * Washington I. Mayo, Robert H. Mayo, Milton S. Mayo, and my daughter, Fannie E. At-kinson, wife of Fred Atkinson in equal shares but in the event one or more of my said children shall die before or after the death of my said wife without legal issue him or her surviving the equal portion so devised to the one or more of them so dying shall pass and go to the survivor of the one or more of my said children so dying.

"Should one or more of my said children die before or after the death of my said wife leaving issue him or her surviving the issue of such deceased child shall take the share devised to the parent so dying.

"But the devise in this clause contained is subject to the express condition that neither of my said children herein specifically named nor his, her or their survivors or survivor, his, her or their issue shall have power to incumber, sell, charge against or upon or lease said real estate or any part thereof or interest therein until twenty-one years and ten months after the death of the last remaining survivor of my said children herein specifically named. Provided further that the respective interests in said real estate may be leased for a period of not longer than one year at a time preference being given to the children living at the time of said lease.

"And provided further that upon the death of all my said children before the expiration of twenty-one years and ten months from the death of the last survivor of them, said real estate shall thereupon be vested absolutely and without further restriction in the real representative or representative of my respective children then owning the said real estate and interest created therein by this will.

\* \* \* \* \* \*

"Provided, further that my Executors, hereinafter named in their discretion and upon consent in writing of such of my aforesaid children as shall be living at the time may and they are hereby empowered to make sale and conveyance of said real estate mentioned in clause II hereof and

receive and acquit the purchaser of the purchase money to be paid therefor and with the proceeds of such sale so paid to and received by them they are directed to purchase real estate in such location and at such price as may be agreed upon by the said executors and such of my said children as may be living at the time and the title to such property so acquired shall be taken to my said children, the survivors or survivor of them, or the issue of such one or more of them as shall have deceased per stirpes and held by them *for the like time and upon the same terms and restrictions* as are imposed in this will upon upon [sic] the said real estate mentioned in clause II herein." (Emphasis ours.)

Clause V directed investment of the testator's surplus personal assets in real estate to be held in the same manner as the farm mentioned in clause IV, the issue of any deceased children taking per stirpes.

Clause VI provided as follows:

"VI. The interests devised and bequeathed by the terms of this will or any profit or income thereof shall not be in any manner encumbered or in any way anticipated by or in any way subject to the debts or liabilities, if any, of either of my said sons or daughter or issue of any one or more of them either by process of law or by any order, assignment or contrac⁺ he or she may make, and *no beneficiary under this will shall have power to dispose of or in any way encumber or charge by way of anticipation or otherwise, any interest in land* or income from the part or share provided for his or her benefit or dispose of charges [sic] or encumber a part of the share itself or his or her interest therein or rights thereto; nor shall such be liable or chargeable in the hands of the executors, or other persons, for any debt or liability of such beneficiary nor shall the same be at any time so liable is [sic] chargeable prior to the actual receipt thereof by such

beneficiary from the executors under and pursuant to the terms and provisions of the trust created and declared by this will." (Emphasis ours.)

The first question to be decided is whether and to what extent Robert and Fannie in 1927 had the power to effect a division of the property.

In Gray v. Gray, 300 Ky. 265, 188 S.W.2d 440, 160 A.L.R. 663 (1945), the testator devised his estate to his widow for life, or until remarriage, with remainder to several named children of his brother, "they to be joint tenants of said land and they are to occupy and use the same together. Any one of them may sell or lease his interest in the said land to any of his cotenants, but no one shall lease or sell any interest to any other person than one of said children or their descendants as hereinafter provided.

"If any one of my said nieces or nephews die either before or after my death, and leave no living descendants his interest shall vest in those living under the same conditions as above. Should any one of said children die leaving descendants the said descendants shall take the place of its parents, but no fee shall vest in any descendant until after all of my nieces and nephews above named shall die, when the event happens the title to said real estate shall vest in the descendants of my said nieces and nephews according to their legal rights."

After the widow's death the nephews and nieces sued for a construction of the will that would enable them to convey the fee. This court held that each of the nieces and nephews took a life estate with defeasible fee in remainder [1] to his or her descendants, and that the restraint on alienation was good as to the life interests but not as to the remainder interests.

■■ The case before us bears striking similarities. Following *Gray,* we construe

---

1. That is, a vested remainder in fee subject to defeasance by the descendant's predeceasing the last surviving life tenant.

the Thomas J. Mayo will as devising to each of the four named children a life estate. The other two having died childless, Robert and Fannie in 1927 were life tenants of the whole. Quite aside from the testamentary restraint on alienation, it is our conclusion that they could not have made a voluntary division that would dispose of future interests they did not own. Cf. Milligan v. Masden, 74 S.W. 1049, 25 Ky.Law Rep. 144 (1903).

█ It is not entirely clear from the 1927 agreement itself that Robert and Fannie actually intended the division to be permanent, in the sense of extending beyond their lives.[2] But assuming they did, nowhere does the will give the life tenants any authority to affect or disturb the fee except insofar as the executors are empowered, with the consent of the life tenants, to sell the property and reinvest the proceeds in other property "for the like time and upon the same terms and restrictions as are imposed" on the property sold. Even if Fannie had signed the agreement both as an individual and in her capacity as executrix, a partition would not have satisfied that provision, because neither part of the farm would then have been held "upon the same terms and restrictions" as before. In the context of this will, it seems clear to us that the words "same terms and restrictions" necessarily embrace identity of ownership. The testator's whole scheme, and the very subject of all the "terms and restrictions" to which he refers, was to keep the ownership intact against all but the two contingencies he could not avoid—death and the law.

█ Continuing with our holding in *Gray,* certainly the restraint on alienation applied validly to the life estates of Robert and Fannie. "It is settled in Kentucky that a restraint prohibiting voluntary alienation of a legal life estate for the entire duration of the estate is valid." Dukeminier, Perpetuities Law in Action,—Kentucky Case Law and the 1960 Reform Act, p. 119; Gray v. Gray, supra. Thus it would appear that even insofar as it affected only their respective life estates, the division between Robert and Fannie violated the restraint. However, the point now is academic, because a conveyance made in violation of a valid restraint against voluntary alienation of a legal interest is not void, but voidable. "If there is no express provision for forfeiture in the instrument, the law implies one and creates a right of entry in the transferor or his heirs."[3] Id., pp. 131–132; Kentland Coal and Coke Co. v. Keen, 168 Ky. 836, 183 S.W. 247, L.R.A. 1916D, 924 (1916). In this instance there has been no assertion or exercise of a right of forfeiture against the interests of Fannie, Robert, or Robert's issue,[4] and under Section 6 of the Kentucky Perpetuities Act of 1960, now KRS 381.221, every right of entry created prior to July 1, 1960, ceased to be enforceable 30 years after its creation unless a declaration of intention to preserve it was recorded before July 1, 1965.[5] This provision, which is the equivalent of a statute of limitation, applies to the right of entry impliedly retained to enforce a restraint on alienation. Id., pp. 132–133. Hence in the absence of a record of such a declaration before July 1, 1965, the restraint itself is no longer enforceable, and

2. Fannie did not testify in this proceeding. What seems probable is that they did so intend, but then learned that their legal right to effect that intention was doubtful.

3. The heirs of Thomas J. Mayo would include persons other than Fannie, her children, and Robert's children.

4. We do not necessarily imply that a forfeiture could have been enforced against Robert's surviving issue. From a practical standpoint, however, they have recog-

nized the division by acquiescence in it since 1935.

5. Since a reversionary right of entry, like a possibility of reverter, amounts to no more than an expectancy, it does not come within the constitutional protection of "vested rights." Cf. 16 C.J.S. Constitutional Law § 226c, pp. 1192–1193; see also Varble v. Phillips, 20 S.W. 306, 14 Ky.Law.Rep. 363 (1892), in which contingent remainders in unascertained parties are classed in the same category.

under no circumstances could anyone now assert a right of entry theretofore existing by reason of a violation of the restraint.

We come then to the question of whether the circuit court could properly confirm the division under KRS 381.36(1), which provides for involuntary partition at the instance of a life tenant.

■ There are three basic statutes in Kentucky authorizing partition. They are KRS 381.120 (as qualified by KRS 381.-130), KRS 381.135. and KRS 381.136.[6] The statutes supplement, or are supplemented by, the traditional jurisdiction of equity courts to decree partition. Cf. KRS 381.-135(16); Howard v. Long, 238 Ky. 822, 38 S.W.2d 951 (1931); Beeler's Heirs v. Bullitt's Heirs, 10 Ky. (A.K.Marsh.) 280, 283 (1821).

■ KRS 381.120, formerly Ky. Stat. § 2348, provides that joint tenants may be compelled to make partition. KRS 381.-135, formerly Civil Code § 499, is broader in scope and detail. It provides that anyone holding land jointly with others may have it divided by the county or circuit court. All persons having interests must be made parties, so they are bound. Cf. KRS 381.135(1) and (3); see also Turley v. Turley, 193 Ky. 151, 235 S.W. 18, 20 (1921). And the person maintaining the action must have a possessory estate— that is, a present right to share possession. II American Law of Property § 6.22, p. 97; Simes and Smith, The Law of Future Interests, § 1766; 2 Powell on Real Property ¶ 290, pp. 529–530; Duke v. Allen, 198 Ky. 368, 248 S.W. 894 (1923). Evidently,

though we need not pursue the question in this proceeding, a judgment in an action brought either under KRS 381.135 or under the non-statutory powers of equity would not bind future interest holders not in esse and thus not before the court.[7] Cf. Burchett v. Clark, 162 Ky. 586, 172 S.W. 1048, 1051 (1915). This may be the reason for KRS 381.136 (formerly Civil Code § 499a) which was enacted as § 1 of Chapter 1171, Acts of 1886, and provides as follows (the word "the" appearing in brackets was not in the original act, but was inserted when it was incorporated in the Civil Code as § 499a):

"Where [the] land is held under deed or will vesting a life estate in two or more persons or in trust for their benefit, with remainder as to the share of each to his or her children or descendants, it shall be lawful for a court of equity, on the petition of one of such life tenants and his or her children or descendants who would then be entitled to such remainder, all persons having interests in such lands being made parties, to partition such land so as to set apart to such life tenants and children or descendants so much of said land to which they shall be entitled in severalty; and to that alone shall attach the title or interest of after-born children or descendants in whom, by the terms of said deed or will, such remainder would vest."

The statute of 32 Henry VIII (1540) extended the remedy of partition to estates for a term of life or years, and also to estates in which some of the cotenants held for a term of life or years and others held estates of inheritance. "At the common

---

6. The authority to sell real estate under various statutes in KRS Chapter 389 implements the right of a plaintiff to have his particular interest sold, as distinguished from a right of partition. Cf. KRS 389.020(1) (b) and (c), formerly Civil Code § 490–2 and 3.

7. There is, however, authority to the contrary. "Doubts were formerly entertained whether in a suit in equity for a partition brought only by or against a tenant for life where the remainder is to a person not in esse, a decree could be made which would be binding upon the persons in remainder. That doubt however is now removed, and the decree is held binding upon them upon the ground of a virtual representation of them by the tenant for life in such cases." Story, Equity Jurisprudence, § 889 (14 ed. 1918). This statement is quoted with approval in Milligan v. Masden, 74 S.W. 1049, 25 Ky.Law Rep. 144 (1903). See also Restatement of Property, § 177.

law, none but parties having estates in possession were bound by the judgment. It could not affect estates in remainder or contingency." Freeman on Cotenancy and Partition, § 439, p. 597 (Bancroft-Whitney & Co., 1886).

 Whatever may have been the law in this state theretofore, the Act of 1886 made it clear that a permanent partition, binding upon future interests, including those of persons not in esse, can be effected by judicial decree when the land is held under a deed or will vesting a life estate in two or more persons with remainder to their respective children or descendants. This is as it should be, because "if it is once accepted that a possessory owner is entitled to partition so that he may enjoy his possession in severalty, it logically follows that all of the other interests in land, present and future, are liable to partition. Some of the other interests in the land may be future, or contingent, so that under the statute their owners could not themselves initiate partition proceedings to compel partition. But, in order to give effective partition to the entire estate of the possessory owner, those future or contingent interests may be subjected to partition." Simes & Smith, The Law of Future Interests, § 1768.

Unfortunately, KRS 381.136 is so worded that literally the action may be instituted only by one of the life tenants and is applicable only if the life estate of each tenant is followed by a remainder in fee to his children. Judging from the dearth of precedent dealing with it, it has been seldom employed. In Eversole v. Combs, 130 Ky. 82, 112 S.W. 1132 (1908), it was held inapplicable, apparently on the technical point that the life estate-remainder relationship had been created by intestacy and the allotment of dower rather than by a deed or will.

 In the particular case now before us, it would certainly seem that the trial court's first conclusion, later abandoned, was correct in that the plaintiffs are not life tenants and therefore cannot proceed under KRS 381.136. The issue of Robert H. Mayo consisted of three children, all of whom survived him. At the very least, each of them took a defeasible fee—that is, a fee simple title subject to divestment upon his death prior to 21 years and 10 months after Fannie's death. Cf. Gray v. Gray, 300 Ky. 265, 188 S.W.2d 440, 160 A. L.R. 633 (1945). But we think their title is even more than that, and is a fee simple absolute in one-half. We reach that conclusion in this way:

 Although the will provides literally (and somewhat paradoxically) that upon the death of all the testator's children "before the expiration of twenty-one years and ten months from the death of the last survivor of them, said real estate shall *thereupon be vested* absolutely and without further restriction," etc. (our emphasis), we are of the opinion that this terminology was intended to delimit the restraint on alienability rather than to postpone the vesting of title. It will be noted, for example, that once the title reaches the issue of the testator's children, he makes no provision for a shifting of any interest outside the direct line of inheritance. If one of Robert's children dies without issue, the testator had nothing in mind as to his interest except that it remain in the family line—in other words, that it not be transmissible by deed or will. All this really amounts to is a restraint, not a withholding of title. Bearing in mind, then, the familiar policy of law that favors vesting of title, we hold that the children of Robert Mayo now have an indefeasible fee in an undivided one-half of the property.

 Since Fannie is still living, the issue who will be surviving at her death are as yet unascertained. Should we treat this action as having been brought under KRS 381.135 rather than KRS 381.136, a question arises as to whether all interests can be brought before the court, whereas KRS 381.136, when applicable, expressly

dispenses with that necessity. The technical result is that Fannie (unless estopped) and her children could force a partition under KRS 381.136 while the children of Robert cannot, because it authorizes the suit only by a life tenant. This, it seems to us, is a rather absurd state of affairs, never intended by those who fashioned the statutory law as it now comes to us. We conclude that common sense and the basic purpose of the law require us to say that since Fannie and her children could maintain the action, so can the Robert Mayo children, despite the circumstance that their father, with whom they could have joined in such a suit, and whose title is now extinguished, is deceased.

Fannie and her children contend, nevertheless, that the trial court could not properly effect a partition by simply confirming the presently existing arrangement, that the law requires the appointment of commissioners for that purpose, as set forth in KRS 381.135. To this the Robert Mayo children respond that such a requirement does not apply under KRS 381.136, but that if it does, Fannie and her children waived it by failure to move for the appointment of commissioners and by agreeing to the submission of the case for judgment.

 It is our opinion that the procedures set forth in KRS 381.135 are applicable under KRS 381.136. It is not without significance that the Act of 1886 was placed in the Civil Code as § 499a and the word "the" inserted before "land". Apocryphal though it may now seem, this action by the compiler of the Civil Code has remained undisturbed and unquestioned for 80 years or so, and we are not disposed to question it. The Act was intended to become a part of Civil Code § 499. We find further support for this deduction in Milligan v. Masden, 74 S.W. 1049, 1950, 25 Ky. Law Rep. 144 (1903), an action very much like this, in which commissioners actually were appointed and this court, in holding a remainderman not bound by a division

made in 1881 by his mother, the life tenant, said:

"But it is proper for us to say that in making a new partition of the land the commissioners should have been instructed to allot to appellants that part of the land on which they had erected buildings and made improvements, without taking into consideration the value of such improvements, in so far as this can be done consistently with an equitable partition of the land as it existed in 1881."

 Regardless of how or under what authority an action for partition is brought, the trial court is not authorized to divide the land without an examination and report by commissioners appointed for that purpose. Boyers v. Boyers, 310 Ky. 727, 221 S.W.2d 657 (1949); Eakins v. Eakins, 112 Ky. 347, 65 S.W. 811, 23 Ky.Law Rep. 1637 (1901). Whether a failure in that respect renders the judgment void or merely erroneous need not be decided, because in any event we do not agree that the appellants waived the defect. It was the appellees who sued for a partition, not the appellants. Indeed, had appellants moved for the appointment of commissioners there would be some basis for arguing that they had abandoned their defense. By parity of reasoning, when the appellees, who asked for a partition in the event the 1927 agreement should be held ineffective, agreed to a submission of the case for judgment without having themselves insisted on the procedures requisite to a partition, it could well be argued that they abandoned that aspect of their complaint. As it is, the judgment went against the appellants, it was erroneous, and they are entitled to relief.

Upon remand the trial court may proceed to effect a partition pursuant to the procedure set forth in KRS 381.135, making appropriate adjustment and allowance for improvements made by the respective parties and their predecessors in interest.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

All concur.

HILL, J., not sitting.